624 N.W.2d 686 (2001)
2001 ND 71
In the Interest of D.N., D.N., and C.N., Children.
Constance L. CLEVELAND, Petitioner and Appellee,
v.
R.N., Father, D.N., Mother, Respondents and Appellants, and
D.N., D.N., and C.N., children, and Mark A. Beauchene, Guardian Ad Litem, Respondents.
Nos. 20000234, 20000235.
Supreme Court of North Dakota.
April 12, 2001.
Rehearing Denied June 8, 2001.
*687 Constance Louise Cleveland, Assistant State's Attorney, Fargo, ND, for petitioner and appellee.
Steven D. Mottinger, Fargo, ND, for respondents and appellants.
MARING, Justice.
[¶ 1] R.N. ("Randy")[1] and D.N. ("Denise") appealed from a juvenile court order terminating their parental rights to their three children, D.N. ("Dustin"), age 16, D.N. ("Donny"), age 11, and C.N. ("Cheryl"), age 9. We conclude there is clear and convincing evidence the children are deprived, the causes and conditions of the deprivation are likely to continue and, as a result of the continued deprivation, the children will probably suffer serious physical, mental, or emotional harm if Randy and Denise's parental rights are not terminated. We affirm.

I
[¶ 2] Under N.D.C.C. § 27-20-44(1)(b)(1) a juvenile court may terminate parental rights, providing (1) the child is a deprived child; (2) the conditions and causes of the deprivation are likely to continue; and (3) the child is suffering, or will in the future, probably suffer serious physical, mental, moral, or emotional harm. The party seeking parental termination must prove all elements by clear and convincing evidence. In re C.R., 1999 ND 221, ¶ 4, 602 N.W.2d 520. On appeal, we review the juvenile court's decision and examine the evidence in a manner similar to a trial de novo. Id. We review the files, records, and transcript of the evidence in the juvenile court, giving appreciable weight to the findings of the juvenile court. Id. Although we are not bound by the juvenile court's findings, we recognize the juvenile court's opportunity to observe the candor and demeanor of the witnesses. In Interest of L.F., 1998 ND 129, ¶ 12, 580 N.W.2d 573.
[¶ 3] At the conclusion of the hearing in this case, the juvenile court made the following relevant findings:

*688 [T]he minor children are deprived children and ... the conditions and causes of the deprivation are likely to continue or will not be remedie[d] and by reason thereof, the children are suffering or will probably suffer serious physical, mental, moral or emotional harm.
[A]lthough the natural parents indicate a desire to improve, they're unable to demonstrate to this Court the present capacity or capacity within the near future to be an adequate parent.
[P]rognostic evidence shows that the parents are presently unable to supply the physical and emotional care for the children and this inability will continue for time enough to render improbable the successful simulation [sic] of the children into the parent family, if the parents' rights are not terminated.
... Cass County Social Services has provided services to the parents in an attempt to remedy the causes of the deprivation and these attempts have not only been reasonable, but have exhausted all that is available and appropriate.
[T]here is no basis to believe that there will be any significant improvement of the ability of either parent if given more time and that it is likely that the causes of the deprivation will not end and cannot be remedied.
The record evidence supports these findings.
[¶ 4] A deprived child is one who "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child's parents, guardian, or other custodian." N.D.C.C. § 27-20-02(8)(a). On three separate occasions, beginning November 24, 1998, these parents stipulated their children are deprived children. On appeal, Randy and Denise do not dispute the trial court's finding their children are deprived. Rather, the parents argue there is not clear and convincing evidence the deprivation of the children will continue and will result in harm to them.

II
[¶ 5] The three children have been in foster care since August 1998, when they were removed from the parents' home after Randy threatened suicide with a loaded pistol pointed to his head in the presence of the children, whereupon he ordered one of them to conduct a countdown. Randy did not fire the pistol, but the record evidence shows he has made several similar suicide threats in the presence of the children.
[¶ 6] Cass County Social Services has conducted 18 child protection assessments since 1990, after receiving reports from various sources who were concerned the parents may have been physically and emotionally abusive to the children. Forrest Ammerman, a social worker employed by the Cass County Social Services Board, testified these assessments confirmed "incidents of harsh parenting and domestic violence."
[¶ 7] Elizabeth Faust, M.D., Medical Director at the Southeast Human Service Center, diagnosed Randy as suffering from obsessive compulsive disorder "of a chronic and very severe nature." Dr. Faust concluded Randy "is still significantly disabled with respect to problem-solving and ability to complete tasks and obligations." In her opinion placing the children back into the parents' home would "likely overwhelm [Randy's] coping abilities." Dr. Faust has prescribed medicine for Randy's condition and she said he has shown improvement when he is taking the medication. However, the record shows Randy has neglected to take his medicine for substantial periods of time. Dr. Faust stated Randy's disorder requires, in addition to medication, behavioral therapy, but such therapy has not been provided to Randy because of his inability to recognize the seriousness of his *689 condition and his unwillingness to comply with such treatment.
[¶ 8] Dr. Dwight Lysne, a board certified child adolescent psychiatrist, has worked with this family for about seven years. Dr. Lysne concluded Randy suffers from Schizoaffective Disorder, a condition in which there is coequal disturbance of mood and thinking, combined with symptoms of paranoia, resulting in Randy having a level of mistrust that is "a significant factor in his resistance and noncompliance with treatment." Dr. Lysne characterizes Randy's illness as "a severe psychiatric condition" through which "his volatile temper, poor impulse control, and severe mistrust of others places him at a chronic risk of harm to himself or others." Dr. Lysne concluded that although the children's paternal grandmother provided some protection for the children prior to her death in January 1998, the children have "been chronically at risk due to [Randy's] psychiatric disability" and the impact of this disability on the children's safety "is greater in the aftermath of their grandmother's death."
[¶ 9] The record shows that Denise, while not suffering the same type of disabling conditions as Randy, has been unwilling to separate from Randy or to protect the children from his physical and emotional abuse. The record shows the children, while under Denise's care, have suffered physical and emotional abuse in the home and have also experienced abhorrent conditions, unrelated to the family's financial status, resulting in extremely poor hygiene and improper feeding. On numerous occasions these parents offered the children food which was foraged from garbage dumpsters of local food operations.
[¶ 10] Dustin, the oldest child, is currently a resident of Archdeacon Gilfillan Center in Bemidji, Minnesota. His treatment coordinator, Jacob A. Fisher, testified Dustin suffers from Asperger's Disorder with severe emotional and behavior disturbances. Dustin deals with conflict through aggression. Fisher testified when Dustin is upset at peers he will "either choke them with both hands around the neck or body slam them on the floor." Fisher testified Dustin needs a highly structured setting with a safe and consistent environment, and it would be difficult for Dustin to have his needs met in the parents' home.
[¶ 11] Rachel Fleissner, M.D., at the Prairie Psychiatric Center in Fargo, reported when Dustin was removed from the parental home two separate attempts were made to place Dustin in foster homes, both of which only lasted one day due to Dustin's unusual affect and behaviors. Dr. Fleissner reports that Dustin said his father "hits him and yells at him and frequently says that he is going to kill himself" and his mother "is verbally insulting to him all of the time." With continued expert care at the center, the medical professionals hope Dustin's condition will substantially improve so he will be adoptable.

III
[¶ 12] Parents' fundamental and natural right to their children is of constitutional dimension, but it is not absolute, and parents must at least provide care to their children that satisfies the minimum community standards. In Interest of L.F., 1998 ND 129, ¶ 9, 580 N.W.2d 573. Long-term and intensive treatment for a parent is not mandated if it cannot be successfully undertaken soon enough to enable the children to be returned to the parental home without causing severe dislocation from emotional attachments formed during long-term foster care. In Interest of A.S., 1998 ND 181, ¶ 33, 584 N.W.2d 853.
[¶ 13] These children have been in foster care for more than two and one-half years. The record evidence shows the children's father suffers from a severe mental disorder resulting in him perpetrating physical and emotional abuse on his spouse and the children. The prognosis for him sufficiently overcoming this disability to be able to adequately parent these children and provide a safe and caring *690 home environment for them is not promising. The children's mother has been unwilling or unable in the past to protect these children from their father's abusive conduct. There is nothing in the record to demonstrate a likelihood that her willingness or ability to protect and care for these children will significantly improve in the future.
[¶ 14] The record evidence shows Cass County Social Services has attempted to provide assistance to these parents to improve their parenting abilities. Randy's belligerent and uncooperative behavior has resulted in the failure of all attempts to assist these parents. A lack of parental cooperation is pertinent in determining whether deprivation will continue. In Interest of L.F., 1998 ND 129, ¶ 17, 580 N.W.2d 573. When there has been an extensive period in which efforts have been made to overcome a parent's inabilities to effectively parent, the courts cannot allow the children "to remain in this indeterminate status midway between foster care and the obvious need for permanent placement." In re A.M., 1999 ND 195, ¶ 9, 601 N.W.2d 253.
[¶ 15] Having carefully reviewed this record, we conclude the conditions and causes of the children's deprivation are likely to continue and as a result the children will probably suffer serious physical, mental, or emotional harm. Giving substantial weight to the juvenile court's findings and opportunity to observe the demeanor and credibility of the witnesses, we conclude there is clear and convincing evidence to support the termination of Randy and Denise's parental rights under N.D.C.C. § 27-20-44(1)(b)(1).
[¶ 16] Affirmed.
[¶ 17] GERALD W. VANDE WALLE, C.J., and CAROL RONNING KAPSNER, DALE V. SANDSTROM, WILLIAM A. NEUMANN, JJ., concur.
NOTES
[1] All names of the parties in this case are pseudonyms.