632 N.W.2d 451 (2001)
2001 ND 143
In the Interest of N.H. and B.H., Children.
Constance L. Cleveland, Petitioner and Appellee,
v.
Director, Cass County Social Services, S.D., R.H., N.H., B.H. and Jared S. Simonson, Guardian ad Litem, Respondents,
S.D., Respondent and Appellant.
No. 20000278.
Supreme Court of North Dakota.
August 29, 2001.
*453 Constance L. Cleveland, (submitted on brief), Assistant State's Attorney, Fargo, for petitioner and appellee. .
Monty G. Mertz, Mertz Law Office, Fargo, for respondent and appellant.
VANDE WALLE, Chief Justice.
[¶ 1] S.D., the mother, appealed the juvenile court order terminating her parental rights to two minor children. We conclude the concurrent planning as applied by Cass County did not violate S.D.'s due process rights, the juvenile court did not violate the parent's right to a fair hearing and there is clear and convincing evidence to warrant termination of S.D.'s parental rights. We affirm.

I
[¶ 2] On August 13, 1999, Constance L. Cleveland, a Cass County Assistant State's Attorney, filed a petition to terminate the parental rights of S.D. and R.H., the father, with respect to their two children, N.H., born in 1987, and B.H., born in 1989.[1] A four-day hearing on the petition was conducted by the juvenile court beginning on July 31, 2000. The hearing included testimony from a psychologist, three social workers, two social work aides, a parole officer, a friend of S.D., an elementary school principal, N.H., S.D. and R.H.
[¶ 3] The juvenile court terminated S.D.'s and R.H.'s parental rights on September 15, 2000. Both children were in shelter care under Cass County Social Services and were residing in the home of the former partner of S.D.'s brother in Moorhead, Minnesota, and had been residing in that home since September, 1997. The juvenile court found both children were deprived, the circumstances which cause the deprivation were likely to continue, the children would probably suffer serious physical, mental, moral, or emotional harm if the parental rights are not terminated, and the children are adoptable. In support of these findings, the juvenile court also found:
1. There has been a significant child protection history with this family beginning in Cass County in 1993 and prior [to] that time in Richland County, North Dakota, due primarily to: criminal behavior on the part of R.H. and S.D. and resulting in incarceration for both individuals; [a]lcohol abuse and chemical abuse by both R.H. and S.D.; domestic violence and related behaviors; and, the *454 resulting neglectful parental behaviors associated therewith.
2. The parents, R.H. and S.D., have not provided the children with basic needs, including stability in their home life, protection, supervision, and an emotionally stable environment.
3. R.H. and S.D. have engaged in violent and abusive behavior toward each other which has adversely affected the children, who have been exposed to this behavior, and on at least one occasion, N.H. received injuries from a knife when she attempted to intervene in a physical altercation between parents.
4. N.H. and B.H. have been found to be deprived by the Juvenile Court on April 20, 1998, after R.H. and S.D. entered an admission to petition alleging the children to be deprived.
....
6. S.D. is presently incarcerated ... completing a sentence resulting from her May 4, 1998, conviction for deliver[y] of controlled substances (three counts). In approximately May, 1999, S.D. was paroled from her sentence.... Within a period of approximately one month, S.D. had violated conditions of her release by possessing marijuana and drug paraphernalia and she was returned to the Missouri River Correctional Center for the purpose of serving the balance of her sentence. Her anticipated release date is December, 2000.... S.D. has taken part in various educational and treatment related programs including parenting programs, chemical dependency programs and community volunteer efforts with the Special Olympics.
....
9. Both parents received a parental capacity examination.... In regards to [S.D.], Dr. Hegstad concluded, "... although [S.D.]'s deficiencies as a parent are serious, I do not believe that they are unamenable to improvement ... despite [S.D.]'s verbal reassurances, unless she can achieve sustained sobriety and stability in her relationships, the prognosis for her becoming an effective parent is poor."
....
13. [S.D.] was released from prison during May, 1999. At that time a service plan was worked on with Cass County Social Services concerning addressing the needs of her children. Little progress was made as within a short period of time [S.D.] was returned to incarceration due to her violation of the conditions of her release and her possession of controlled substance and drug paraphernalia.
14. Services have been offered to the family to achieve the goal of reunification, but little progress has been made and no long term improvement has been achieved due to the lack of consistent involvement by either parent.

II
[¶ 4] A juvenile court may terminate parental rights, providing (1) the child is a deprived child; (2) the conditions and causes of the deprivation are likely to continue; and (3) the child is suffering, or will in the future, probably suffer serious physical, mental, moral, or emotional harm. N.D.C.C. § 27-20-44(1)(b)(1). The party seeking parental termination must prove all elements by clear and convincing evidence. Interest of D.N., 2001 ND 71, ¶ 2, 624 N.W.2d 686. On appeal, we review the juvenile court's decision and examine the evidence in a manner similar to a trial de novo. Id. We review the files, records, and transcript of the evidence in the juvenile court, giving appreciable weight to the findings of the juvenile court. Id. Although we are not bound by the juvenile court's findings, we recognize the *455 juvenile court's opportunity to observe the candor and demeanor of the witnesses. In Interest of L.F., 1998 ND 129, ¶ 12, 580 N.W.2d 573.
[¶ 5] Under N.D.C.C. § 27-20-02(8)(a), a deprived child is one who "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child's parents, guardian, or other custodian." S.D. argues she voluntarily placed her children in the care of her brother and his partner in September 1997, rather than that placement being a result of a finding of deprivation. However, the voluntary nature of this placement is of limited significance because this voluntary placement was done in anticipation of her incarceration. Furthermore, S.D. admitted the children were deprived in response to the petition alleging the children to be deprived in 1998; S.D. was incarcerated at the time of the trial; and she testified she would not be prepared to take custody of the children upon release. She also admits the children have been harmed by the damaging relationship between her and R.H. Upon review of the record, we hold the finding the children are deprived is supported by clear and convincing evidence.
[¶ 6] S.D. argues she has completed every class and treatment recommended and offered during her incarceration, including completing a drug treatment program, attending alcohol addiction meetings, parenting classes, computer skills class. Also, she claims she has arranged for a job upon her release and believes she can remain sober and drug free. She argues there was "really no evidence presented that preserving S.D.'s parental rights would result in harm to her children." While admitting the fear expressed by both children of being forced to live with their parents, S.D. claims if the children stay in the current foster home for the foreseeable future, there would be no harm to them.
[¶ 7] We consider prognostic evidence as a basis for reasonable predictions about future behavior when we determine whether a child's deprivation is likely to continue or will not be remedied. Interest of C.R.C., 2001 ND 83, ¶ 14, 625 N.W.2d 533. Prognostic evidence includes reports and opinions of professionals. In the Interest of D.F.G., 1999 ND 216, ¶ 20, 602 N.W.2d 697. Additionally, we consider the lack of parental cooperation with social service agencies, which is insufficient to establish deprivation but is pertinent to whether deprivation will continue. C.R.C., at ¶ 14.
[¶ 8] Although there is some evidence of efforts by S.D. to deal with her addiction and learn appropriate parenting behavior during her incarceration, she has not demonstrated success outside of the incarceration setting. The psychologist who evaluated her testified S.D. has deficits in some of her psychology and behaviors that might make it difficult for her to consistently parent her children. These deficits pose a potential harm to the children. The psychologist identified S.D.'s personality disorder traits that are likely to continue. These traits are in addition to the diagnosed disorders of dependence on alcohol and cannabis. The psychologist also testified S.D. poses a high risk of noncompliance in regards to B.H.'s treatment for his attention deficit hyperactivity disorder. An example of the evidence of the continuing nature of her problems is S.D.'s recent failure to abide by parole requirements in May 1999, resulting in her return to incarceration to serve out her term.
*456 [¶ 9] S.D. asks we maintain the children in a foster home. But, after an extensive period during which efforts have been made to overcome a parent's inability to effectively parent, the court cannot allow the children "to remain in this indeterminate status midway between foster care and the obvious need for permanent placement." In the Interest of A.M., 1999 ND 195, ¶ 9, 601 N.W.2d 253. Long-term and intensive treatment for a parent is not required if it cannot be successfully undertaken in time to enable the children to be returned to the parental home without causing severe dislocation from emotional attachments formed during long-term foster care. In Interest of A.S., 1998 ND 181, ¶ 33, 584 N.W.2d 853; In Interest of C.K.H., 458 N.W.2d 303 (N.D.1990).
[¶ 10] We hold clear and convincing evidence supports the finding the deprivation is likely to continue or will not be remedied and therefore the children are suffering and will probably suffer serious physical, mental, moral, or emotional harm.

III
[¶ 11] S.D. contends the concurrent planning procedure of N.D.C.C. § 27-20-32.2(5) is unconstitutional as applied by Cass County Social Services, violating the parents' rights to procedural and substantive due process. She argues that reasonable efforts to reunify the child with the parents are unrealistic when the agency is concurrently planning for permanent placement of the child other than with the parents.
[¶ 12] Section 27-20-32.2(2), N.D.C.C., requires reasonable efforts to prevent removal of a child or to reunify the child with the child's family:
Except as provided in subsection 4[2], reasonable efforts must be made to preserve and reunify families:
a. Prior to the placement of a child in foster care, to prevent or eliminate the need for removing the child from the child's home; and
b. To make it possible for a child to return safely to the child's home.
[¶ 13] Subsection 3 of N.D.C.C. § 27-20-32.2 requires reasonable efforts for permanent placement of the child once the court or the custodian determines continuing efforts to return the child to the child's home are inconsistent with the plan for permanent placement of the child.
If the court or the child's custodian determined that continuation of reasonable efforts, as described in subsection 2, is inconsistent with the permanency plan for the child, reasonable efforts must be made to place the child in a timely manner in accordance with the permanency plan and to complete whatever steps are necessary to finalize the permanent placement of the child.
[¶ 14] Subsection 5 of N.D.C.C. § 27-20-32.2 allows the custodial agency to make these two types of reasonable efforts concurrently.
Efforts to place a child for adoption, with a fit and willing relative or other appropriate individual as a legal guardian, or in another planned permanent living arrangement, may be made concurrently *457 with reasonable efforts of the type described in subsection 2.
[¶ 15] Although S.D. does not challenge the constitutionality of N.D.C.C. § 27-20-32.2 on its face, she does claim Cass County unconstitutionally applied this statute in her case. The Cass County Social Services social worker testified once the permanency plan recommends termination of parental rights and adoption, termination becomes the agency's top priority. However, because of the concurrent planning provision of N.D.C.C. § 27-20-32.2(5), the reasonable efforts to reunify the children with their parents continues at the same time. S.D. contends this practice deprives her of due process because the same social worker, whose duty it is to make a reasonable effort to reunify the family, is also working to terminate the parental rights. Therefore, S.D. maintains Cass County Social Services did not make reasonable efforts to reunify S.D. and her children once the decision was made to pursue termination of parental rights. Specifically, S.D. argued Cass County Social Services, as custodians of the children, controlled access to the children and did not facilitate adequate visitation while S.D. was incarcerated. However, the social worker asked S.D. if she wanted the social worker to force the children to come to visit her in prison. S.D. said she did not want to force the children, but would like them to be coaxed to come and see her. The social worker and other family members did bring the children to visit their mother in prison about six to nine times in the previous year.
[¶ 16] Section 27-20-32.2(1) defines "reasonable efforts" as the exercise of due diligence by the agency to use appropriate and available services to meet the needs of the child and the family. "In determining reasonable efforts to be made with respect to a child under this section, and in making reasonable efforts, the child's health and safety must be the paramount concern." N.D.C.C. § 27-20-32.2(1). Cass County Social Services continued to work with the parents to develop and execute family preservation plans. S.D.'s violation of parole resulting in her incarceration limited her ability to meet the requirements. S.D.'s incarceration necessarily limited her visits with her children, but, the juvenile court's decision to terminate S.D.'s parental rights was not based on a lack of regular visitation.
[¶ 17] The natural rights of parents to their children are fundamental and are constitutionally protected; however, their rights are not absolute or unconditional, and parents must provide care that satisfies minimum community standards. Interest of C.R.C., 2001 ND 83, ¶ 6, 625 N.W.2d 533. Due process provides certain procedural protections before the parent-child relationship may be terminated. In the Interest of A.S., 1998 ND 181, ¶ 14, 584 N.W.2d 853. Cass County Social Services continued to make reasonable efforts to reunify the family, concurrent with proceeding in a timely manner to finalize the permanent placement of the child. Recognizing that the child's health and safety are the paramount concern, we hold S.D. fails to establish how concurrent planning as applied by Cass County Social Services in complying with N.D.C.C. § 27-20-32.2 violated her due process rights.

IV
[¶ 18] S.D. argues the juvenile court abused its discretion by allowing the petitioner to amend the petition on the morning of the trial over objections of both parents. The amended petition added an alternative basis for parental termination of the children in that they were in foster care for at least four hundred fifty out of the previous six hundred sixty nights. *458 Section 27-20-44(1)(b)(2), N.D.C.C., provides this extended period in foster care as an alternative finding justifying the termination of parental rights, effective August 1, 1999. Both parents objected to the amended petition, because the petitioner had requested a continuance which resulted in a longer period of time in foster care prior to the trial. However, the juvenile court did not rely on N.D.C.C. § 27-20-44(1)(b)(2) as a basis to terminate S.D.'s parental rights and there was no consequence to allowing the amended petition.
[¶ 19] S.D. contends the trial court abused its discretion by admitting records of her convictions. Evidence of S.D.'s criminal convictions is relevant to the issue of whether her children are deprived and if the deprivation is likely to continue and is not unfairly prejudicial. The juvenile court noted "[w]e have at issue here whether either of the respondents can conform to the rules of society, which has been a significant factor in determining the stability of their home when they were living with their children." The evidence of prior convictions is admissible under N.D.R.Ev. 402 which provides that all relevant evidence is admissible and N.D.R.Ev. 403 which excludes relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Because of its effect on her children, S.D.'s prior record is not unfairly prejudicial.
[¶ 20] S.D. also asserts the juvenile court abused its discretion by allowing her child, N.H., to testify. S.D. objected to N.H. testifying because N.H. was not listed on the witness list, the guardian ad litem objected to the child's testimony, and the attorneys had not had the opportunity to interview the child. The juvenile court stated there was no absolute entitlement to interview the witness, especially in the absence of any attempt to depose them. Because the attorneys had the opportunity to cross-examine N.H. and were familiar with the guardian ad litem's report and N.H. was almost thirteen years old and was a party to the proceeding, the juvenile court did not abuse its discretion by allowing N.H. to testify.

V
[¶ 21] We affirm the order of the juvenile court terminating the parental rights of S.D. with respect to N.H. and B.H.
[¶ 22] KAPSNER, MARING, NEUMANN and SANDSTROM, JJ., concur.
NOTES
[1] R.H. did not appeal the termination of his parental rights.
[2] Section 27-20-32.2(4) provides:

Reasonable efforts of the type described in subsection 2 are not required if:
a. A court of competent jurisdiction has determined that a parent has subjected the child to aggravated circumstances; or
b. The parental rights of the parent, with respect to another child of the parent, have been involuntarily terminated.