2001 ND 183

In the Interest of D.R. and S.R.

Stephen R. Dawson, Petitioner
and Appellee,

v.

Director, Cass County Social Services,
D.J.R., S.L., and D.R., S.R., and Benja-
min Thomas, Guardian ad Litem, Re-
spondents,

and

M.R., Respondent and Appellant.

In the Interest of D.R. and S.R.

Stephen R. Dawson, Petitioner
and Appellee,

v.

Director, Cass County Social Services,
D.J.R., D.R., S.R., and Benjamin
Thomas, Guardian ad Litem, Respon-
dents,

and

M.R., Respondent and Appellant.

Nos. 20010098, 20010099.

Supreme Court of North Dakota.

Dec. 5, 2001.

Constance Louise Cleveland, Assistant State's Attorney, Fargo, ND, for petitioner and appellee.

Jared S. Simonson, Simonson Law Office, Fargo, ND, for respondent and appellant.

MARING, Justice.

[¶ 1]   M.R. ("Maria") [1] appealed from an order terminating her parental rights to

---

1.   The names of the parties, except the State,   are pseudonyms.

her children, D.R. ("Dan") and S.R. ("Susan"). We hold there is clear and convincing evidence the children are deprived, the causes and conditions of the deprivation are likely to continue, and, as a result of the continued deprivation, the children will probably suffer serious physical, mental, or emotional harm if Maria's parental rights are not terminated. We affirm.

## I

[¶ 2] Under N.D.C.C. § 27–20–44(1)(b)(1) a juvenile court may terminate parental rights if (1) the child is a deprived child; (2) the conditions and causes of the deprivation are likely to continue; and (3) the child is suffering, or will in the future, probably suffer serious physical, mental, moral, or emotional harm. The party seeking parental termination must prove all elements by clear and convincing evidence. *In re T.K.*, 2001 ND 127, ¶ 2, 630 N.W.2d 38. On appeal, we review the juvenile court's decision and examine the evidence in a manner similar to a trial de novo. *Id.* We review the files, records, and transcript of the evidence in the juvenile court, and although we are not bound by the findings of the juvenile court, we give those findings appreciable weight and give deference to the juvenile court's decision, because that court had an opportunity to observe the candor and demeanor of the witnesses. *Id.*

## II

[¶ 3] Maria was born in December 1962 and was 38 years old at the time of the termination proceedings. She was married for the first time at age 20 and in March 1982 gave birth to a daughter, S.L. ("Sandra").[2] After seven years of marriage, Maria divorced her first husband and married D.R. ("David") in 1988. David is the father of Dan, born November 3, 1988, and Susan, born March 8, 1990. David has not had contact with the children for many years, and he is currently incarcerated in California. David's parental rights were also terminated by the court's order, but David has not appealed from the court's decision.

[¶ 4] Maria has had physical custody of Susan and Dan since they were born. Maria candidly admits she started using contraband drugs at age 20, primarily methamphetamines, and she has a drug addiction. Maria also concedes she has been convicted on several occasions of both possession and delivery of contraband drugs. She acknowledges she has both consumed and sold illegal drugs in her home while the children were living with her.

[¶ 5] Maria also acknowledges she has lived with male roommates who have been abusive to both her and the children. One of the roommates both physically and sexually abused Susan. Although Susan promptly informed Maria about the incident of sexual abuse, Maria did not report it until several months afterward when Susan did not want to attend school.

[¶ 6] In October 1998, the children were removed from Maria's home when authorities found controlled substances and drug paraphernalia there. Maria was taken into custody and the children were temporarily placed with their maternal grandmother in Moorhead. In March 1999, Maria admitted the children were deprived, and the children were then placed in foster care by Cass County Social Services while Maria served a six-month sentence of drug addiction treatment at Share House in Fargo. Maria was released from Share House in July 1999. The children were not immediately returned to Maria, however, because Ma-

---

2. Sandra turned age 18 in March 2000 and is not a party to these proceedings.

ria continued to live with the boyfriend who had abused Susan, and there was a restraining order preventing him from having any contact with Susan. Susan and Dan were returned to Maria on August 3, 1999, when the boyfriend moved out of Maria's house.

[¶ 7] On September 21, 1999, law enforcement authorities, during a probation search of Maria's home, again discovered contraband drugs and paraphernalia. The children were removed and placed in foster care. On December 27, 1999, Maria was convicted of class C felony possession of a controlled substance and class A misdemeanor possession of drug paraphernalia. She was sentenced to the custody of the Department of Corrections for a period two years. On December 29, 1999, Maria began serving her sentences of incarceration. On June 7, 2000, Maria was convicted of class A felony delivery of a controlled substance and was sentenced to incarceration for three years.

### III

#### A. Deprivation

[¶ 8] The juvenile court found that Susan and Dan are deprived children. A deprived child is statutorily defined under N.D.C.C. § 27–20–02(8)(a), as one who "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child's parents, guardian, or other custodian." At the time of the termination proceedings, both parents were incarcerated, resulting in Susan and Dan not having available parental care or control by either parent.

[¶ 9] Dr. Kevin Schumacher has a Ph.D. in psychology and is employed at Psychiatric Medicine Associates in Fargo. He works mostly with children and adolescents. Social Services personnel referred Susan and Dan to Dr. Schumacher in December 1998, and he has counseled them regularly, about once every two weeks, since that time. Dr. Schumacher testified that both Susan and Dan have emotional and mental health problems stemming from a home background which is "chaotic and unpredictable and damaging." Dr. Schumacher testified the children were seriously affected by being removed from the mother when she was jailed and then, after briefly being reunited with her, they were removed again when Maria was incarcerated. He testified that this has created "a good deal of lack of clarity in terms of who's going to take care of me, which is a fundamentally very scary question for a child and I'm not sure that that question's been answered yet. So the kids have been hanging literally by their fingernails psychologically wondering about what their social environment and familial environment is going to be like." Dr. Schumacher testified the children are very combative with each other, have serious attendance and achievement problems at school, toilet hygiene and bed wetting problems, and emotional and psychological stress and problems. He testified these children will require long-term counseling and treatment.

[¶ 10] Maria admitted in open court that the children are deprived as defined by the statute. On appeal, she does not raise this element for parental termination as an issue.

#### B. Continuation of Deprivation

[¶ 11] Maria's primary contention on appeal is that there is not clear and convincing evidence the deprivation of these children is likely to continue. Evidence of a parent's background, including previous incidents of abuse and depriva-

tion, may be considered in determining whether deprivation is likely to continue. *In Interest of L.F.*, 1998 ND 129, ¶ 16, 580 N.W.2d 573. Evidence of past or present deprivation, however, is not alone sufficient to terminate parental rights, and there must be prognostic evidence that deprivation will continue or be unremedied. *Id.* This Court has defined prognostic evidence as evidence that forms the basis of reasonable predication as to future behavior. *In Interest of A.S.*, 1998 ND 181, ¶ 19, 584 N.W.2d 853.

[¶ 12] Pamela Sand, a case manager with the Cass County Social Services Agency, testified that Maria continued to use drugs even though many support services were being offered to her and the family, including intensive therapy treatment, when the September 1999 drug arrest occurred. Ms. Sand testified that although it is not impossible the causes of the children's deprivation will be remedied upon Maria's release from prison "a 20 year drug addiction is a very long, timely process to recover from and ... the length of time that that would take would be longer than the children can wait for some permanency, for a permanent home."

[¶ 13] Maria introduced evidence that, while incarcerated since December 29, 1999, she has successfully completed several courses on proper parenting and dealing with chemical addiction. She testified she intends to stay drug free and to provide an appropriate home environment for her children. Maria acknowledged during her trial testimony, however, that she has had treatment for her addiction six times in the past without success. The juvenile court found that Maria "has a long self-reported history of usage of illegal drugs.... Services have been offered and attempted with [Maria] and her children including Family Focused Services, in Home Services, and chemical dependency treatment;

however, these services have not resulted in adequate positive change."

[¶ 14] Regarding the prospect for successfully reuniting the children with Maria, Dr. Schumacher testified:

Well, as I sit here today if the only option were to reunite with mom, I would assert that the only way that will be successful at all is if they have a fairly wide range of services including in-home family support and fairly intensive parenting support in terms of management. Both children can act up quite violently at times and be aggressive to each other.

They also have considerable spirit, which is difficult parenting at best. I think the kids would probably need a good deal of therapy with their mother to try and instill things like a trust because fundamentally, although they love their mom, I'm not sure they trust her. And that's a pretty scary issue. The key would be mom's behavior here regardless of the children's symptoms, whether they're acute or chronic, without a stable, confident mom in a healthy role there, I think that we would predict failure again.

Dr. Schumacher stopped short of recommending termination of Maria's parental rights, because he had not had an adequate opportunity to evaluate her for ruling out the possibility she could become capable of parenting these children.

[¶ 15] This Court has recognized that a juvenile court need not operate in a vacuum in termination proceedings. *See In re A.L. and J.L.*, 2001 ND 59, ¶ 16, 623 N.W.2d 418. It can give substantial credence to evidence indicating a pattern of conduct by a parent that forms a basis for reasonable prediction of the parent's future behavior. *Id.* Long-term and intensive treatment for a parent is not mandated if it cannot be successfully

undertaken soon enough to enable the children to be returned to the parental home without causing severe dislocation from emotional attachments formed during long-term foster care. *In re D.N.*, 2001 ND 71, ¶ 12, 624 N.W.2d 686.

■■■ [¶ 16] Although Maria's successful completion of parenting and addiction courses during her incarceration is encouraging, it provides little assurance that she can sufficiently turn her life around to effectively parent these children. Maria has had a long history of drug addiction, parenting failures, and unsuccessful treatment regimens. Considering Maria has been unable or has simply refused to change so many times in the past, her apparent attitude change while currently incarcerated is tenuous evidence upon which to confidently predict Maria, when released from prison, will abandon her long-term drug addiction, refrain from her past pattern of living with abusive male roommates, and place her children's needs before her own. However commendable it may be that a parent desires to change her lifestyle and to learn how to become a fit parent, the courts cannot allow the children to suffer the predictable consequences when it turns out the parent is unable to sufficiently turn around a dysfunctional lifestyle to become an effective parent. *See In Interest of J.L.D.*, 539 N.W.2d 73, 78 (N.D.1995).

[¶ 17] It was only a matter of months prior to these termination proceedings that Maria's children were taken from her when she was placed in custody for drug violations. Maria received drug addiction treatment for several months. Upon her release, Maria did not immediately seek to be reunited with her children. Instead, she resumed living with a boyfriend who had physically abused both herself and her daughter, Susan, and had sexually assaulted Susan. Maria should have realized that

by choosing to continue living with this man she was placing her needs ahead of her children's needs and was, thereby, shirking her parental responsibilities. Nevertheless, Maria chose this companion over her children. When the children were returned to Maria in August 1999, the family was provided comprehensive support, which according to Pamela Sand "was probably all the resources we had available in the community." In spite of that help, Maria continued to abuse drugs. Maria's actions again forced the children out of their home and into foster care. Voluntary choices, like those made by Maria, have consequences, and they also have prognostic value. Based upon our review of this record, we conclude there is clear and convincing evidence the deprivation of Susan and Dan is likely to continue and not be remedied.

C. Harm to the Children

■■■ [¶ 18] To terminate parental rights, the evidence must show that as a result of the continued deprivation, the child is suffering, or will in the future probably suffer physical, mental, moral, or emotional harm. *In Interest of L.F.*, 1998 ND 129, ¶ 27, 580 N.W.2d 573. Dr. Schumacher testified that if these children were returned to the same chaotic unpredictable home environment as they have been living in, the children would continue to suffer serious emotional and psychological damage. He testified that if the home environment remains chaotic, hurtful, and unpredictable he would predict "further deterioration or long time bad outcomes in terms of adult status." Dr. Schumacher assessed the consequences of Maria's parenting failures:

What I saw was a mom who loved her kids but was unfortunately unable to put them first on her list. There were a number of other issues there. I saw a parent that wasn't able to protect her

children as I think she should have from some very bad people that entered and left their lives. Even day-to-day things like keeping the children from fighting with each other or having to depend on each other when they don't have the resources to, that wasn't happening. Getting to school and getting the home-work done, that wasn't happening. And again, witnessing some very strange things that must have been most scary for them. Protecting them from that wasn't happening.

Maria has also conceded that if the court concludes the deprivation would likely con-tinue, then the element of the children suffering future serious psychological and emotional harm has been met.

### IV

[¶ 19] We hold there is clear and con-vincing evidence Susan and Dan are de-prived children, the conditions and causes of the deprivation are likely to continue, and, as a result, the children will likely suffer serious physical, mental, and emo-tional harm if parental termination is not granted. We, therefore, affirm the order of the juvenile court terminating Maria's parental rights to these children.

[¶ 20] GERALD W. VANDE WALLE, C.J., and WILLIAM A. NEUMANN, DALE V. SANDSTROM, CAROL RONNING KAPSNER, JJ., concur.