Filed 6/21/11 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2011 ND 111

Interest of T.T., a Child

Grand Forks County Social 

Service Center, Petitioner and Appellee

v.

F.T. (Father), Respondent and Appellant

No. 20110066

Appeal from the Juvenile Court of Grand Forks County, Northeast Central Judicial District, the Honorable Debbie Gordon Kleven, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Jacqueline Ann Gaddie (argued), Assistant State’s Attorney, 124 South 4th Street, P.O. Box 5607, Grand Forks, ND 58206-5607, for petitioner and appellee.

Kerry Shannon Rosenquist (argued), 301 North 3rd Street, 3rd Floor, Suite 300, Grand Forks, ND 58203, for respondent and appellant.

Interest of T.T., a Child

No. 20110066

Crothers, Justice.

[¶1] F.T. appeals the juvenile court judgment granting the State’s petition to involuntarily terminate F.T.’s parental rights.  We affirm. 

I

[¶2] On September 17, 2009, the State filed a petition to terminate F.T.’s parental rights, alleging T.T. is deprived, neglected and abandoned and the conditions are likely to continue.  A hearing was held on December 21, 2009.  F.T. moved to sequester the State’s witnesses.  The juvenile court granted the motion, stating that the State’s witnesses should remain in the hallway until called to testify and that Irene Dybwad, the representative from Grand Forks County Social Services, could stay in the courtroom.  

[¶3] The first witness to testify was Kristi Cavalli.  “During the testimony of the first witness, Irene Dybwad was observed to leave the courtroom on two occasions.  During a recess [F.T.’s attorney] observed Dybwad speaking with [the State’s] witnesses.”  F.T. raised the issue to the court.  The court gave F.T. the opportunity to question the witnesses that were seen talking in the hallway.  The witnesses testified that no specific testimony was discussed, that they were told the State had a hard time qualifying Cavalli as an expert and that they were told to stick to their reports.  

[¶4] F.T. moved for a mistrial.  The State opposed the motion.  The juvenile court granted a mistrial, stating: 

“I’m going to—I don’t think I’m left with any alternative but to grant a mistrial in this case.  I apologize.  I guess I should have explained that sequestering means do not go—leave the courtroom and talk to any of the witnesses.  I assumed that everyone involved in this case had testified many times before in a case like this and was well aware of that rule.  But there should not be any comment ever on how someone’s testimony was presented, how to testify, and I guess I’m really bothered by the fact that there would be any comment made on sticking to what’s in your report or the trial tactics.  That’s part of the respondents’ attorneys job is to not get somebody qualified as an expert. 

“I have to grant a mistrial, and I would hope in the future that this doesn’t happen. . . . I will tell you now I’m real leery about having a supervisor sit in the courtroom knowing that they weren’t called to testify and then violating the rules of sequestration.  I just—I guess I never thought that would happen.”  

[¶5] Before the second hearing, F.T. moved to prevent the State’s three witnesses involved in the mistrial from testifying at the second hearing, arguing that allowing the witnesses to testify would be unfair because the witnesses knew the questions F.T.’s attorney would ask.  The State opposed the motion, arguing that F.T. did not present an offer of proof showing F.T. would be prejudiced by the discussion, that Cavalli and the three other witnesses did not work with T.T. during the same time period and that their substantive testimony about T.T. would not overlap.  The juvenile court denied F.T.’s motion, stating that the mistrial was granted based on Dybwad’s misconduct and that F.T. would be able to cross-examine the three witnesses about the sequestration violation.  

[¶6] On October 22, 2010, the juvenile court held a second hearing.  Based on the evidence from the hearing, the juvenile court found T.T. is a deprived child, T.T. is likely to suffer serious physical, mental, moral, or emotional harm if he is placed in the custody of F.T., T.T. has been in foster care for at least four hundred and fifty out of the previous six hundred and sixty nights and reasonable efforts were made to reunify T.T. and F.T.  The juvenile court entered judgment terminating F.T.’s parental rights.  F.T. appeals. 

II

[¶7] F.T. argues the juvenile court abused its discretion by allowing the State’s three witnesses involved in the sequestration violation to testify.  The State argues F.T. failed to show he was prejudiced by the sequestration violation.  

[¶8] “A trial court has broad discretion when deciding evidentiary matters.”  
State v. Friedt
, 2007 ND 108, ¶ 8, 735 N.W.2d 848.  This Court will not reverse a trial court’s admission of witness testimony unless the trial court abused its discretion.  
Id.
  An “[a]buse of discretion occurs when a trial court acts arbitrarily, unconscionably, or unreasonably, or when a decision is not based on a rational mental process.”  
Id.
 

[¶9] Rule 615, N.D.R.Ev., provides, “At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order on its own motion.”  Sequestration is required if requested by either party.  
State v. Wanner
, 2010 ND 121, ¶ 12, 784 N.W.2d 143.  Sequestration prevents witnesses from tailoring their testimony and allows the court to detect inconsistencies between different witnesses’ testimony.  
State v. Buchholz
, 2004 ND 77, ¶ 24, 678 N.W.2d 144.  However, a sequestration order does not prohibit out-of-

court communication unless the court specifically states the communication is prohibited.  
Id.
 at ¶ 25 (“In the absence of specific language in the sequestration order addressing witnesses’ out-of-court communications during trial, . . . the plain language of [Rule 615] does not apply to witnesses’ out-of-court communications during trial.”).  

[¶10] The juvenile court’s sequestration order required the State’s witnesses to remain in the hallway until called to testify.  The order did not expressly prohibit out-

of-court communication.  Nonetheless, the juvenile court concluded a mistrial was necessary based on Dybwad’s conduct and then allowed the State’s witnesses, who were seen talking in the hallway, to testify at the second hearing.  To show the juvenile court abused its discretion by subsequently allowing a witness to testify, “[the movant] must show prejudice.”  
Wanner
, 2010 ND 121, ¶ 17, 784 N.W.2d 143.  F.T. did not make an offer of proof at trial, and the only prejudice he asserts is that the witnesses were able to anticipate F.T.’s attorney’s questions.  We conclude the juvenile court did not abuse its discretion by allowing the State’s witnesses to testify because F.T. did not demonstrate he would be prejudiced by the communication while the sequestration order was in effect.  

III

[¶11] F.T. asserts the juvenile court erred by finding that reasonable efforts were made to reunite himself and T.T.  “On appeal, findings of fact in juvenile matters shall not be set aside unless clearly erroneous.”  
In re J.S.L.
, 2009 ND 43, ¶ 12, 763 N.W.2d 783.  “A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made.”  
In re I.B.A.
, 2008 ND 89, ¶ 15, 748 N.W.2d 688.  

[¶12] Section 27-20-32.2(2), N.D.C.C., requires the State to make reasonable efforts to preserve and reunify families.  Reasonable efforts means that “after removal, [the State] use[s] appropriate and available services to eliminate the need for removal and to reunite the child and the child’s family.”  N.D.C.C. § 27-20-32.2(1).  “The State, however, is not required to ‘exhaust every potential solution before seeking termination of parental rights.’”  
In re A.B.
, 2010 ND 249, ¶ 26, 792 N.W.2d 539 (quoting 
In re A.B.
, 2009 ND 116, ¶ 25, 767 N.W.2d 817). 

[¶13] The juvenile court found:

“Reasonable efforts were made to reunify [T.T.] and [F.T.] but were unsuccessful because of [F.T.’s] refusal to participate or cooperate.  Services made available to [F.T.] include Foster Care Case Management, Child Protection in both Grand Forks County and Cass County, Child and Family Team Meetings, alcohol and drug evaluations, psychiatric examination and parenting assessment, programming available through the Community Violence Intervention Center (CVIC), Wishing Well Visitation, Guardian ad Litem, and Wrap Around Case Management.”  

[¶14] The State’s witnesses testified foster care case management, child protection, child and family team meetings, alcohol and drug evaluations, parenting psychological assessment, programming through CVIC, Wishing Well Visitation, guardian ad litem and wrap around case management were available to F.T.  The witnesses testified F.T. did not attend all of the child and family team meetings and he cancelled visits at the Wishing Well Visitation Center.  They also testified F.T. did not participate in any of the services available through the CVIC.  The juvenile court’s findings are supported by the record and are not clearly erroneous.  

[¶15] F.T. argues Grand Forks County Social Services had him participate in a parenting evaluation for the sole purpose of terminating his parental rights because the psychologist recommended terminating his parental rights instead of making parenting recommendations.

[¶16] Grand Forks County Social Services had a concurrent goal of reunification when it recommended F.T. complete a parenting assessment.  Social services can pursue termination of parental rights and reunification of a parent and child at the same time.  
See
 
In re N.H.
, 2001 ND 143, ¶ 17, 632 N.W.2d 451.  “[C]ourts cannot allow a child to ‘remain in this indeterminative status midway between foster care and the obvious need for permanent placement.’”  
In re M.G.
, 2010 ND 157, ¶ 15, 786 N.W.2d 710 (quoting 
In re A.B.
, 2009 ND 116, ¶ 23, 767 N.W.2d 817).  “[A] child’s health and safety are the paramount concern.”  
In re N.H.
, at ¶ 17.  The juvenile court’s finding that reasonable efforts were used to reunite F.T. and T.T. is supported by evidence and therefore is not clearly erroneous. 

IV

[¶17] The juvenile court’s judgment granting the State’s petition to terminate F.T.’s parental rights is affirmed. 

[¶18] Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.