2001 ND 137

**Interest of R.O., V.O. and J.H.**

**Keith BERGER, Director Grand Forks County Social Services, Petitioner and Appellee,**

v.

**F.O., Respondent,**

and

**L.H., Respondent and Appellant.**

**Interest of R.O., V.O., and J.H.**

**Keith Berger, Director Grand Forks County Social Services, Petitioner and Appellee,**

v.

**F.O., Respondent and Appellant,**

and

**L.H., Respondent.**

**Nos. 20000305, 20000307.**

Supreme Court of North Dakota.

July 20, 2001.

Dale R. Rivard, Special Assistant State's Attorney, Child Support Enforcement Unit, Grand Forks, ND, for petitioner and appellee.

DeWayne Johnston, Olson Johnston Law Office, Grand Forks, ND, for respondent and appellant F.O.

Steven M. Light (on brief), Larivee & Light LTD, Grand Forks, ND, for respondent and appellant L.H.

SANDSTROM, Justice.

[¶ 1] The father, F.O., and the mother, L.H., separately appeal from a juvenile court order terminating their parental rights to three minor children. We conclude the juvenile court did not err in admitting into evidence the testimony and reports of certain individuals who treated the parents, and there is clear and convincing evidence to warrant termination of the parents' parental rights. We affirm.

I

[¶ 2] The parents became involved with Grand Forks County Social Services in October 1995, with a child protection service report about physical neglect of their unborn oldest child.[1] At that time, child protection services recommended the mother keep the home clean, safe, and sanitary. The oldest child was born in January 1996 and was placed in the care of the Grand Forks Social Service Board. In January 1997, Carol Schneweis, a therapist at Northeast Human Services Center, contacted Social Services about the mother's use of Nuprin while she was pregnant with the parents' second child. When Schneweis visited the home, the mother's face was swollen, and the mother indicated the father had hit her. An assessment report said services were required because of indicators of neglect by the parents. Another child protection report was filed in June 1997, when law enforcement officers stopped the father's vehicle. The second oldest child was with the father in the vehicle, and the officers found marijuana and marijuana paraphernalia belonging to the father in the vehicle.

[¶ 3] In January 1998, Social Services received additional reports of child abuse or neglect by the parents. Social Services investigated the parents' home and documented concerns about the general lack of hygiene:

> [T]he kitchen is full of dirty dishes, garbage, and old food. On one occasion there was a pan of vegetables on the stove that appeared to be rancid. Garbage was stacked everywhere and there were dirty diapers on the kitchen floor and on the floor in the childrens' bedroom. Ashtrays within the childrens' reach were piled high with cigarette butts, and the childrens' bedroom was littered with dirty clothes and no path to walk. The sheets in the baby's crib were urine and milk stained and filthy. The carpet is completely stained and the children crawl around on it.

[¶ 4] In April 1998, Social Services received additional reports of suspected child abuse or neglect in the parents' home. After an investigation, an assessment report indicated services were required, based on physical neglect, inadequate supervision, and psychological maltreatment. In August 1998, another assessment report of child abuse or neglect was filed. In October 1998, the Grand Forks Police Department investigated the parents' home for possible child neglect. The investigating officer described the home as extremely cluttered with the distinct smell of human waste.

[¶ 5] During the course of Social Services involvement with the parents, they received treatment from several individuals, including (1) Myron Veenstra, a psychologist at Northeast Human Services Center; (2) Don Newberry, a psychologist at Northeast Human Services Center; (3) Kim Miller, an addiction counselor at Northeast Human Services Center; (4)

---

1. In 1994, the mother's parental rights to two other children were terminated in Polk County, Minnesota.

Vicky Morrissette, a counselor who facilitated a parenting Nurturing Program attended by the parents; and (5) Schneweis.

[¶ 6] A May 28, 1998, petition alleging child deprivation cited numerous formal reports of alleged child abuse or neglect against the parents since September 1995. In December 1998, based on a stipulation of the parents, the juvenile court found the children were deprived and placed them in the custody of the Director of the Grand Forks County Social Service Center for 18 months. In August 1999, the State petitioned to terminate the parents' parental rights, alleging numerous incidents and reports of alleged child abuse or neglect.

[¶ 7] During a March 2000 trial, the State sought to introduce into evidence the testimony and reports of Veenstra, Newberry, Miller, Morrissette, and Schneweis. The court initially sustained the parents' objections under N.D.R.Ev. 503 to the admission of testimony and reports of Veenstra, Newberry, and Morrissette and overruled the parents' objection to the admission of testimony of Schneweis. The parents also objected to Miller's report and testimony under federal law and *Jane H. v. Rothe*, 488 N.W.2d 879 (N.D.1992). The court indicated it would review Miller's records before ruling on the objection, and Miller did not testify further at the March trial.

[¶ 8] The trial was continued for several months, and during the continuance, the State moved for admission of the testimony and reports of Veenstra, Newberry, Morrissette, and Miller under N.D.C.C. § 50–25.1–10. The court decided to allow the State to introduce the reports and testimony of those witnesses. After a further hearing, the court terminated the parents' parental rights to their children, finding the children were deprived, the deprivation was likely to continue, and the children would suffer serious mental and emotional harm if the parents' parental rights were not terminated. The court also decided the children had spent 634 out of the previous 660 days in foster care, and the parents' parental rights could be terminated under N.D.C.C. § 27–20–44(1)(b)(2), which authorizes termination of parental rights when a child has spent 450 days out of the previous 600 days in foster care. The parents appealed.

[¶ 9] The juvenile court had jurisdiction under N.D.C.C. §§ 27–20–02(11) and 27–20–03(1)(b). The appeals are timely under N.D.C.C. § 27–20–56(1), N.D.R.App.P. 4(a), and *B.R.T. v. Executive Dir. of Soc. Serv. Bd.*, 391 N.W.2d 594, 597 (N.D.1986). This Court has jurisdiction under N.D. Const. art. VI, §§ 2, 6, and N.D.C.C. § 27–20–56(1).

II

[¶ 10] A juvenile court may terminate parental rights if the court finds a child is deprived; if the conditions and causes of the deprivation are likely to continue or will not be remedied; and, if the child is suffering, or in the future will probably suffer, serious physical, mental, moral, or emotional harm. N.D.C.C. § 27–20–44(1)(b). *See In Interest of A.S.*, 1998 ND 181, ¶ 15, 584 N.W.2d 853; *In Interest of L.F.*, 1998 ND 129, ¶ 10, 580 N.W.2d 573. The State must prove the elements for termination by clear and convincing evidence. *A.S.*, at ¶ 15; *L.F.*, at ¶ 10.

[¶ 11] We review a juvenile court's decision to terminate parental rights in a manner similar to a trial de novo. *A.S.*, 1998 ND 181, ¶ 13, 584 N.W.2d 853; *L.F.*, 1998 ND 129, ¶ 12, 580 N.W.2d 573. We review the "files, records, and minutes or transcript of the evidence of the juvenile court, giving appreciable weight to the findings of the juvenile

court." N.D.C.C. § 27–20–56(1). Although our review is similar to trial de novo, we give deference to the juvenile court's decision because the court had the opportunity to observe the candor and demeanor of the witnesses. *A.S.*, at ¶ 13; *L.F.*, at ¶ 12.

### III

### A

[¶ 12] The parents argue the juvenile court erred in admitting into evidence the testimony and reports of the individuals involved with the parents' treatment. The parents argue the reports and testimony were inadmissible under the physician-patient and psychotherapist-patient privilege in N.D.R.Ev. 503, and N.D.R.Ev. 503 is not abrogated by N.D.C.C. § 50–25.1–10.

[¶ 13] Under N.D.R.Ev. 402, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States or the State of North Dakota, by any applicable Act of Congress, by statutes of North Dakota, by these rules, or by other rules adopted by the Supreme Court of North Dakota." Rule 501, N.D.R.Ev., says except as otherwise provided by constitution, statute, or these rules or other rules promulgated by the North Dakota Supreme Court, no person has a privilege to refuse to be a witness, or to refuse to disclose any matter. Rule 503(b), N.D.R.Ev., authorizes a patient to prevent any person from disclosing confidential communications made for the purpose of diagnosis or treatment of the patient's physical, mental, or emotional condition, including alcohol or drug addiction.

[¶ 14] Chapter 50–25.1, N.D.C.C., outlines a procedure for reporting child abuse or neglect, and protects persons making and investigating the reports. Section 50–25.1–01, N.D.C.C., recognizes the purpose of Chapter 50–25.1 is to encourage reports about children who are known to be, or suspected of being, abused or neglected. Chapter 50–25.1, N.D.C.C., generally identifies persons, including mental health professionals and addiction counselors, who are required or permitted to report knowledge or incidents of known or suspected child abuse or neglect, *see* N.D.C.C. § 50–25.1–03; specifies the methods of reporting, *see* N.D.C.C. § 50–25.1–04; identifies the procedures for assessment of any report of child abuse or neglect, *see* N.D.C.C. § 50–25.1–05; and outlines the procedures for determining and implementing services required for abused or neglected children. *See* N.D.C.C. § 50–25.1–05.1. Under N.D.C.C. § 50–25.1–11(6), all reports of suspected child abuse or neglect are confidential and must be made available to "[a] court whenever it determines that the information is necessary for the determination of an issue before the court." Section 50–25.1–10, N.D.C.C., abrogates privileged communications in cases involving reports of child abuse or neglect:

> Any privilege of communication between husband and wife or between any professional person and the person's patient or client, except between attorney and client, is abrogated and does not constitute grounds for preventing a report to be made or for excluding evidence in any proceeding regarding child abuse, neglect, or death resulting from abuse or neglect resulting from a report made under this chapter.

[¶ 15] In *In Interest of R.D.S.*, 259 N.W.2d 636, 639 (N.D.1977), this Court discussed N.D.C.C. § 50–25.1–10 in the context of a doctor's testimony in a termination case:

> The dissent places great weight on the use of past history, expressing the view that this is "especially important and

necessary if the rules of evidence are so construed as to prevent the testimony of medical personnel who could help shed more light on what the future may hold." While the trial court did refuse to hear the testimony of a medical doctor, the petition before the court alleged deprivation. Such an allegation does not bring into play the statutory abrogation of all but the attorney-client privilege as found at § 50–25.1–10, NDCC. Had the petition alleged *neglect,* and had the proceeding resulted from a report of child abuse or neglect, pursuant to Chapter 50–25.1, NDCC, the Rule 503 physician and psychotherapist-patient privilege *would* have been abrogated.

[¶ 16] In *In Interest of J.A.,* 283 N.W.2d 83 (N.D.1979), this Court discussed a similar issue in the context of a doctor's testimony in a termination case predicated on child abuse. This Court said, for the doctor's testimony to be admissible and for N.D.C.C. § 50–25.1–10 to abrogate the privilege in N.D.R.Ev. 503, there must be "substantial compliance" with the requirement for a report or complaint of child abuse or neglect:

> The parents appear to have argued in the juvenile court that the physician- and psychotherapist-patient privilege was not abrogated in this proceeding by Section 50–25.1–10, N.D.C.C., because in this case, according to them, the initial termination petition contained no specific allegation that the proceeding was brought pursuant to Chapter 50–25.1, N.D.C.C.
>
> At the time of the hearing [seeking a] court-ordered examination [of the parents], a petition alleging deprivation was pending in juvenile court. That petition alleged that it was "based upon an investigation by the Grand Forks County Social Service Center *and other reliable informants on a complaint of Abuse.*

> ..." [Emphasis added.] Thus the suggestion in *Interest of R.D.S., supra,* that the provisions of Chapter 50–25.1 [Child Abuse and Neglect] apply to a deprivation proceeding only if there are specific allegations in the petition that the proceedings are held pursuant to that chapter and that the prerequisites of that statute have been met, was substantially complied with; it is apparent that the petition was based upon a complaint of abuse, and, although that complaint is not part of the record, Mrs. Wy Sheppard testified at the termination hearing that she made the complaint to the Social Service Center of Grand Forks County. The petition for termination of parental rights refers to the existence of the petition alleging deprivation and the proceedings resulting therefrom. Furthermore, notwithstanding the statements in *Interest of R.D.S., supra,* we do not necessarily conclude that the proceedings under Chapters 27–20 and 50–25.1, N.D.C.C., are entirely different. Chapter 50–25.1 sets forth a method for reporting child abuse and provides certain protections to the persons making such complaints and to the persons investigating those complaints. That chapter contemplates that a report of child abuse, followed by an investigation of that report, might result in proceedings under Chapter 27–20. See Sec. 50–25.1–08, N.D.C.C.

*In Interest of J.A.,* 283 N.W.2d at 90–91.

■ [¶ 17] To the extent that *Interest of R.D.S.,* 259 N.W.2d 636 (N.D.1977), attempted to distinguish allegations of deprivation from allegations of neglect for purposes of abrogating privileged communications, we hold the distinction is one without a difference. *See In Interest of J.A.,* 283 N.W.2d at 90–91 (concluding proceedings under the Uniform Juvenile Court Act, N.D.C.C. ch. 27–20, are like

proceedings alleging child abuse and neglect under N.D.C.C. ch. 50–25.1 because a report of child abuse or neglect may result in proceedings under the Uniform Juvenile Court Act). The interrelatedness of these two chapters is further demonstrated by the definition of "neglected child" in N.D.C.C. ch. 50–25.1. *See* N.D.C.C. § 50–25.1–02(8) ("Neglected child" means a deprived child as defined in chapter 27–20.). Although the parents claim the termination petition alleges only N.D.C.C. ch. 27–20 as a basis for the action, the petition alleges numerous reports of abuse or neglect that substantially comply with the requirement of reports of abuse or neglect under N.D.C.C. ch. 50–25.1. The August 1999 termination petition alleged, among other things, the October 1998 investigation by the Grand Forks Police Department of possible child neglect and subsequent report to Grand Forks County Social Services. We conclude N.D.C.C. § 50–25.1–10 abrogates the privilege in N.D.R.Ev. 503 in cases involving reports of alleged child abuse or neglect even when the termination petition alleges N.D.C.C. ch. 27–20 as a basis for the action. *See In Interest of J.A.*, 283 N.W.2d at 90–91. We hold the juvenile court did not err in admitting into evidence the reports and testimony of Veenstra, Newberry, Schneweis, and Morrissette.

### B

[¶ 18] The parents argue the psychotherapist-patient relationship is constitutionally protected as a right of privacy, and application of N.D.C.C. § 50–25.1–10 to this case is an unconstitutional invasion of their fundamental right to privacy.[2]

[¶ 19] The parents did not raise this constitutional issue before the juvenile court. It is well established that issues not raised in the trial court, even constitutional issues, generally will not be addressed on appeal. *Peters–Riemers v. Riemers*, 2001 ND 62, ¶ 25, 624 N.W.2d 83; *Moilan v. Moilan*, 1999 ND 103, ¶ 32 n. 2, 598 N.W.2d 81; *In Interest of A.E.*, 1997 ND 9, ¶ 17 n. 2, 559 N.W.2d 215. *See also In Interest of A.G.*, 506 N.W.2d 402, 403–04 (N.D.1993) (stating issues not raised in juvenile court cannot be raised on appeal in which supreme court exercises standard of review similar to trial de novo). The parents have not preserved this constitutional issue for our review.

### C

[¶ 20] The parents argue federal law prohibits the admission into evidence of the report and testimony of Kim Miller, an addiction counselor.

[¶ 21] Under our rules, all relevant evidence is generally admissible except as otherwise provided by the federal and state constitutions, by state statute or rule, and by any applicable Act of Congress. N.D.R.Ev. 402. Federal law provides a detailed scheme for restricting disclosure of a patient's records about drug and alcohol treatment at a federally assisted facility. 42 U.S.C. § 290dd–2(a); 42 C.F.R. § 2.12. A court of competent jurisdiction may order disclosure for good cause. 42 U.S.C. § 290dd–2(b); 42 C.F.R. § 2.64. *See Jane H. v. Rothe*, 488 N.W.2d 879, 882–83 (N.D.1992). In *Jane H.*, at 883–84, this Court described criteria for finding good cause and the procedures for disclosure of information regarding drug or alcohol treatment. If the court finds good cause for compelling disclosure of information, the court must restrict disclosure to

---

2. The parents have not raised a separation-of-powers argument. *See State v. Hanson*, 558 N.W.2d 611 (N.D.1996).

the parts of a patient's records that are essential. *Id.* at 883.

[¶ 22]   Here, the juvenile court apparently conducted an in-camera review of Miller's records and thereafter decided to allow her to testify and use her records. The court did not make a specific finding of good cause, and its order did not limit disclosure in any manner.  Any deficiency in the juvenile court's procedure does not affect the outcome in this case, however, because under our de novo review of the juvenile court proceedings, which are not open to the public, there is clear and convincing admissible evidence supporting termination of the parents' parental rights, without the testimony of the addiction counselor.

### IV

[¶ 23]   Under   N.D.C.C.   § 27–20–44(1)(b)(1), a juvenile court may terminate parental rights if there is clear and convincing evidence the children are deprived, the deprivation is likely to continue, and the children will suffer serious mental and emotional harm if parental rights are not terminated. *In Interest of A.L.,* 2001 ND 59, ¶ 5, 623 N.W.2d 418.  We review a juvenile court's decision to terminate parental rights in a manner similar to trial de novo. *Id.* at ¶ 6.

[¶ 24]   Here, there is clear and convincing evidence to establish the abysmal and filthy living conditions that the parents provided for these children.  Lack of cleanliness of the home does not alone establish deprivation. *See Interest of J.K.S.,* 274 N.W.2d 244, 249 (N.D.1979); *see also Interest of W.E.,* 2000 ND 208, ¶ 36, 619 N.W.2d 494 ("It is not reason enough to deprive parents of custody that their home is not the best, or even that they are not the best parents that could be offered to the child, so long as the child does not suffer physical or moral harm, or

lack of food or clothing.") (citation omitted).  In this case, however, testimony established abhorrent and unsanitary conditions, creating serious health risks for the children.  Rancid food, fecal matter on the carpet, and bed sheets covered with urine and spoiled milk in a sipper cup in the crib go beyond mere lack of cleanliness.  Coupled with the other evidence, including the parents' history and background, the father's narcotics arrest while accompanied by his child, the overall lack of parental supervision, and psychological maltreatment of the children, the deprivation exceeded a simple lack of cleanliness.  The parents' indifference to the childrens' welfare clearly and convincingly establishes the children are deprived and will suffer serious mental and emotional harm if parental rights are not terminated.

[¶ 25]   Although evidence of past deprivation alone is not sufficient to terminate parental rights, evidence of the parents' background, including previous abuse or deprivation, may be considered in determining whether deprivation is likely to continue. *A.S.,* 1998 ND 181, ¶ 19, 584 N.W.2d 853.  Because evidence of past deprivation alone is not enough to terminate parental rights, prognostic evidence is necessary to determine continued or future deprivation. *Id.* We have defined prognostic evidence as evidence that forms a basis for a reasonable prediction of future behavior. *Id.*

[¶ 26]   The evidence of the parents' background and history, coupled with the properly admitted testimony and reports of Veenstra, Newberry, Schneweis, and Morrissette, forms a basis for a reasonable prediction of the parents' future behavior.  The evidence clearly and convincingly establishes prognostic evidence the deprivation will continue.  Under our de novo standard of review, we conclude there is

clear and convincing evidence to support the termination of the parents' parental rights under N.D.C.C. § 27–20–44(1)(b)(1).

[¶ 27] The juvenile court also decided the children had been in foster care for 634 out of the previous 660 days, which was sufficient to sustain the termination under N.D.C.C. § 27–20–44(1)(b)(2),[3] which authorizes termination of parental rights when a child has spent 450 out of the previous 600 days in foster care. The evidence clearly and convincingly establishes the children have been in foster care for more than 450 out of the previous 600 days. The juvenile court therefore did not err in terminating the parents' parental rights under N.D.C.C. § 27–20–44(1)(b)(2).

## V

[¶ 28] We affirm the juvenile court order terminating the parents' parental rights.

[¶ 29] GERALD W. VANDE WALLE, C.J., and WILLIAM A. NEUMANN, MARY MUEHLEN MARING, CAROL RONNING KAPSNER, JJ., concur.

---

3. The father's reply brief in this Court claims N.D.C.C. § 27–20–44(1)(b)(2) should be struck down "as being improper, overbroad, vague, and unconstitutional." The father, however, did not raise the issue in the juvenile court, or in his initial brief to this Court. The father's constitutional argument about N.D.C.C. § 27–20–44(1)(b)(2) is not properly before this Court. *See Peters–Riemers*, 2001 ND 62, ¶ 25, 624 N.W.2d 83 (declining to address constitutional issue not raised in trial court); *Hendrickson v. Hendrickson*, 2000 ND 1, ¶ 20, 603 N.W.2d 896 (declining to address issue raised for first time in reply brief).