652 N.W.2d 341 (2002)
2002 ND 164
In the Interest of K.S. and A.S., Minor Children.
L.J. Bernhardt, Petitioner and Appellee
v.
K.S., a child, A.S., a child, the Executive Director of the North Dakota Department of Human Services, Respondents,
T.S., their mother, Respondent and Appellant,
K.S., Sr., their father, Respondent and Appellee.
No. 20010315.
Supreme Court of North Dakota.
October 15, 2002.
*344 Owen K. Mehrer, Assistant State's Attorney, Dickinson, N.D., for petitioner and appellee.
Gary D. Ramsey, Greenwood & Ramsey, PLLP, Dickinson, N.D., for respondent and appellant.
Sandra K. Kuntz, Mackoff, Kellogg, Kirby & Kloster, P.C., Dickinson, N.D., for respondent and appellee.
NEUMANN, Justice.
[¶ 1] T.S. ("Tammy")[1] appealed from an order terminating her parental rights to her children, K.S. ("Ken") and A.S. ("Allen"). We hold there is clear and convincing evidence the children are deprived, the causes and conditions of the deprivation are likely to continue, and, as a result of the continued deprivation, the children will probably suffer serious physical, mental, or emotional harm if Tammy's parental rights are not terminated. We affirm.

I
[¶ 2] K.S., Sr., ("Kip") is from Dickinson. He moved to Flagstaff, Arizona, met Tammy, and married her on July 18, 1997.[2] While living in Arizona they together had Ken, who was born in 1997, and Allen, who was born in 1998. Shortly after Allen's birth the family moved to Dickinson.
[¶ 3] Since 1999, Stark County Social Services has received numerous abuse and neglect complaints against Tammy and Kip. Tammy admits she is an alcoholic who has also used methamphetamines, cocaine, and marijuana. She testified that Kip also abused drugs and alcohol and that he was physically, verbally, and emotionally abusive of her and would beat her in front of the children. Tammy testified she has had a drinking problem since 1998. She admits that twice a month she would drink until she passed out and that in the year 2000 she started drinking daily. Tammy testified that during the summer of 1999 she met a male neighbor and, after Kip moved out of the parties' home, Tammy and the neighbor began a relationship and lived together between February 2000 and March 2001. Tammy and Kip were divorced in May 2000. Tammy testified she and her new male companion abused alcohol and together would drink heavily and often.
[¶ 4] Ken and Allen were removed from Tammy's custody on October 26, 2000, when Tammy was found intoxicated and unconscious, lying on the floor of her home, while the children were in another room with the door closed. Since that time the boys have been in foster care. A petition alleging the children were deprived was filed, and a hearing was held on November 27, 2000. Kip failed to appear or contest the petition. Tammy conceded the children were deprived and surrendered custody of them to social services personnel.
[¶ 5] After many failed attempts to rehabilitate Tammy, the director of Stark *345 County Social Services filed a petition on July 26, 2001, to terminate Kip and Tammy's parental rights to the children. When the termination hearing began in October 2001, Kip was 31 years old and Tammy was 25 years old. Kip did not contest the petition to terminate his parental rights but, through an attorney, appeared at the hearing to support the termination of his and Tammy's parental rights so the children could be placed in an appropriate adoptive home. Tammy contested the petition. After a hearing, the juvenile court granted the petition, terminated Kip and Tammy's parental rights, and transferred custody of the children to the Executive Director of the North Dakota Department of Human Services for adoption placement. Tammy appealed.

II
[¶ 6] Under N.D.C.C. § 27-20-44(1)(b)(1) a juvenile court may terminate parental rights if: (1) the child is a deprived child; (2) the conditions and causes of the deprivation are likely to continue; and (3) the child is suffering, or will probably suffer, serious physical, mental, moral, or emotional harm. The party seeking parental termination must prove all elements by clear and convincing evidence. In re D.R., 2001 ND 183, ¶ 2, 636 N.W.2d 412. On appeal, we review the juvenile court's decision and examine the evidence in a manner similar to a trial de novo. Id. We review the files, records, and transcript of the evidence in the juvenile court, and although we are not bound by the findings of the juvenile court, we give those findings appreciable weight and give deference to the juvenile court's decision, because that court had an opportunity to observe the candor and demeanor of the witnesses. Id.

A. Deprivation
[¶ 7] To terminate parental rights the court must first find the child is a deprived child. In re T.K., 2001 ND 127, ¶ 2, 630 N.W.2d 38. A deprived child is statutorily defined under N.D.C.C. § 27-20-02(8)(a), as one who "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child's parents, guardian, or other custodian." At the November 2000 deprivation hearing, Tammy conceded the children were deprived and voluntarily surrendered their temporary care to social services personnel.
[¶ 8] At the termination hearing, commencing October 11, 2001, the juvenile court received into evidence and took judicial notice of the court's November 28, 2000 findings of fact, conclusions of law, and order of disposition, wherein the court found the children were deprived and temporarily removed custody of the children from their parents. After the termination hearing, the juvenile court made the following written finding:
[T]he factual basis for the adjudication that the children were deprived is set forth in paragraphs III(a) through (i) of the Findings of Fact, Conclusions of Law and Order of Disposition dated November 28, 2000, (Petitioner's Exhibit # 3) and the Court finds these allegations to be true and not contested in this proceeding.
[¶ 9] An order finding a child deprived and temporarily transferring custody of the child is not res judicata for purposes of determining whether the child is a deprived child in proceedings to terminate parental rights. In Interest of R.H., 262 N.W.2d 719, 723 (N.D.1978). In parental termination proceedings, due process *346 and notice requirements prohibit the juvenile court from taking judicial notice of testimony in proceedings where termination was not an issue; however, when the termination hearing is a culmination of prior proceedings, the court need not operate in a vacuum as to the results of those proceedings. In Interest of R.M.B., 402 N.W.2d 912, 917 (N.D.1987). Tammy did not expressly stipulate to a finding of deprivation for purposes of the termination hearing. Although a court can take judicial notice of its prior orders, the result of the November 2000 temporary custody proceeding, standing alone, is not sufficient to constitute clear and convincing evidence of deprivation for the purpose of terminating Kip and Tammy's parental rights.
[¶ 10] After the termination hearing, the juvenile court also made written findings that:
[Kip] has admitted that he cannot provide proper care for the children ... and that his parental rights should be terminated ... the children are deprived because [Tammy] is unable to provide them with proper parental care necessary for their physical, mental, or emotional health and the deprivation is not due to the lack of financial means.
[¶ 11] In our de novo review of an order to terminate parental rights we only consider testimony and evidence introduced at the termination hearing for the resolution of the issues on appeal. See In Interest of M.R., 334 N.W.2d 848, 853 (N.D.1983). Error not affecting substantial rights of the parties must be disregarded. N.D.R.Civ.P. 61; Huesers v. Huesers, 1998 ND 54, ¶ 11, 574 N.W.2d 880. Nonprejudicial mistakes by the lower court constitute harmless error and are not grounds for reversal. Olander Contracting Co. v. Gail Wachter Investments, 2002 ND 65, ¶ 26, 643 N.W.2d 29; see also In re R.O., 2001 ND 137, ¶ 22, 631 N.W.2d 159 (any deficiency in lower court's procedure in admitting testimony of addiction counselor did not affect the outcome of the case and was harmless error where the appellate court, after de novo review, concluded there was clear and convincing evidence supporting parental termination, without the addiction counselor's testimony).
[¶ 12] Considerable evidence was introduced at the termination hearing to support the juvenile court's finding that these boys are deprived children. Annie Pikarski is a foster parent for the boys, who were placed in her home on January 31, 2001. Pikarski has a "therapeutic foster home," meaning that she is capable of providing therapy for special needs children. Pikarski has a degree in education with certification in special needs children and a master's degree in education administration and leadership. She testified that when the boys entered her home it was obvious they had been emotionally, psychologically, and physically abused. They were not able to verbalize and they were terrified. She testified Ken came to her home at age three and one-half exhibiting a physical age of one and an emotional age of an infant. He had no bonding ability and did not trust anyone. He would self-mutilate himself at times and suffered from night terrors, where he would scream for hours. She testified Allen came into her home at an emotional level of an infant and that he looked like a malnourished child with "a swollen belly and he had nothinghis skin was just falling off his bones." She testified the boys are extremely afraid of being left alone and will scream even if she only leaves momentarily to retrieve the mail. She testified the boys' needs are so great and they are so difficult to handle that even a specially trained sitter will not return to care for them after one time.
*347 [¶ 13] Dr. Diedra Duchock, a licensed clinical psychologist, evaluated the boys. She diagnosed both boys as suffering from post-traumatic stress disorder, which is a reaction from severe trauma with symptoms of irritability, lack of trust, nightmares, and avoidance of things that remind them of the past and the agent of the trauma. She testified the boys' disorders are most likely the result of them having suffered in their home from violence, abuse, being locked in their rooms, and not being fed regularly. She testified their post-traumatic stress disorder is severe and that both boys most likely experienced ongoing trauma and neglect while in their home.
[¶ 14] Dr. Duchock testified that when Ken arrived he was a highly agitated boy who was extremely fearful and often glanced at her "like a frightened animal." She said he suffered from significant emotional delay and was unable to play or verbalize. She said he most likely never had his needs consistently met in his parents' home and was exposed to extreme danger, making him feel unsafe and in fear of his life. Dr. Duchock testified that Allen was also a very agitated boy who was emotionally at an infantile level and was emotionally very damaged and fearful. She concluded Allen's developmental level was significantly retarded. Dr. Duchock recommended that the boys' visits with Tammy be suspended because the children became so traumatized by the visits.
[¶ 15] After reviewing the record and considering only the testimony and evidence presented at the termination proceedings, we conclude there is clear and convincing evidence that Ken and Allen are deprived children.

B. Continuation of Deprivation
[¶ 16] The juvenile court found that the conditions and causes of the deprivation of these children are likely to continue. Tammy's primary contention on appeal is that there is not clear and convincing evidence that the deprivation will continue.
[¶ 17] To determine whether the conditions and causes of the deprivation are likely to continue, evidence of past or present deprivation alone is insufficient to terminate parental rights, and there must be prognostic evidence that deprivation will continue or be unremedied. In Interest of L.F., 1998 ND 129, ¶ 16, 580 N.W.2d 573. We have defined prognostic evidence as evidence that forms the basis for a reasonable prediction as to future behavior. Id. Prognostic evidence must demonstrate the parent is presently unable to provide physical and emotional care for the child, with the aid of available social agencies if necessary, and that this inability to care for the child will continue for a sufficient time to render improbable the successful assimilation of the child into a family if that parent's rights are not presently terminated. Id. at ¶ 17. A lack of parental cooperation is pertinent in determining whether deprivation will continue. In re T.K., 2001 ND 127, ¶ 14, 630 N.W.2d 38.
[¶ 18] Tammy testified she began drinking alcohol as a teenager, that she realized she had a serious drinking problem in 1998, and that she now realizes she is an alcoholic. However, Tammy has been unable or unwilling to complete necessary treatment programs to give her a realistic chance of overcoming her alcohol addiction so she can learn to adequately parent her children. Instead, Tammy has consistently chosen to establish relationships with males who exacerbate her drinking problem. According to Tammy, Kip was physically, verbally, and emotionally abusive to her. She testified that he caused her to drink excessively on a daily basis, often until she would pass out, and *348 also to use illegal drugs. When Kip moved from the family home, Tammy almost immediately established a relationship with another male, who also drank heavily and contributed to her drinking problem. According to Tammy, that relationship lasted until March 2001, at which time she met another male with whom she established a relationship in May 2001. They lived together in a house in Belfield, and during that time Tammy concedes she went on a three-week drinking binge. Tammy testified this latest boyfriend has been having "an ongoing fling" with another woman while in a relationship with Tammy. She also acknowledged that this boyfriend has been previously convicted for aggravated assault upon a woman, resulting in the victim receiving a broken nose and a fractured left eye socket. Tammy testified that in the past two years she has had nine different residences, including stays in motels for extended periods of time. At one point she became so despondent she attempted suicide and was taken to the State Hospital for treatment.
[¶ 19] Ellie Papineau is a licensed addiction counselor. She scheduled an intake interview with Tammy for alcohol and drug services on November 6, 2000, after the boys had been placed in foster care. Tammy came to that meeting intoxicated. Papineau recommended that Tammy go to an addiction treatment center at Minot for women and their children or a similar one in Williston, where patients can receive alcohol addiction treatment and parental training. Tammy responded that "she would rather leave her kids than leave Dickinson" and her boyfriend who lived there. Tammy returned to inquire about the Minot and Williston treatment programs and was given applications for them but she never made arrangements to attend either program.
[¶ 20] On several instances Tammy made brief attempts to begin day treatment alcohol addiction programs but failed to complete them. Tammy ultimately received a certificate on March 2, 2001, for completing a day treatment program at the Badlands Human Service Center, but she failed to follow up her treatment with necessary counseling and group therapy. There is considerable record testimony that Tammy continued to abuse alcohol through the summer of 2001.
[¶ 21] Corinne Karlin is a licensed addiction counselor at the Badlands Human Service Center and has been Tammy's case manager since August 1999. She testified that Tammy has not made significant progress with her alcohol addiction because of her failure to complete treatment programs and aftercare. After completing the day treatment program in March 2001, Tammy agreed to do individual aftercare sessions and co-dependency weekly group sessions, but she failed to do either. Karlin testified that Tammy's prognosis for addiction recovery is very poor.
[¶ 22] Terry L. Welch was appointed guardian ad litem for the boys by the juvenile court. In his August 19, 2001 report he recommended Tammy and Kip's parental rights be terminated, and stated:
Since [Tammy] became involved with the court in 2000; she has not made a good faith effort at sobriety. In addition, she has not tried to keep in contact with her children. Because of her drive to drink; [Tammy] continues to be unable or unwilling to meet the emotional and physical needs of her children.
In addition to her admitted alcohol addiction, Tammy testified she has disabilities which prevent her from working, consisting of "spinal damage and brain damage and slight paralysis on my right-hand side." Tammy testified she has had this disability for 11 years.
*349 [¶ 23] We conclude the record in this case is replete with evidence showing clearly and convincingly that Ken and Allen's deprivation will continue. Tammy's history of alcohol and drug abuse with numerous failed attempts at controlling her addiction, together with evidence of Tammy's failure to fully cooperate with social service workers to receive the necessary treatment and services for her to become a fit parent, demonstrate a very poor prognosis for Tammy's ability to provide minimally adequate care for her boys. See, e.g., In re D.F.G., 1999 ND 216, ¶ 21, 602 N.W.2d 697. Long-term and intensive treatment for a parent is not mandated if it cannot be successfully taken soon enough to enable the children to be returned to the parental home without causing severe dislocation from emotional attachments formed during long-term foster care. In re D.N., 2001 ND 71, ¶ 12, 624 N.W.2d 686. When there has been an extensive period in which efforts have been made to overcome a parent's inabilities to effectively parent, the courts cannot allow the children to remain in an indeterminate status midway between foster care and the obvious need for permanent placement. Id. at ¶ 14. When the mental and physical health of a child are the concerns, it is not enough that a mother indicates a desire to improve. In re T.K., 2001 ND 127, ¶ 17, 630 N.W.2d 38. To terminate parental rights, a court need not await the happening of a tragic event. Id.
[¶ 24] Tammy has been given considerable time and numerous chances to cope with her addictions, to change her priorities, to improve her parenting abilities and to insure a safe home for her children. She has continuously failed to take advantage of the opportunities to change. We commend Tammy for having successfully completed a day treatment program for her alcohol addiction. Unfortunately, Tammy did not avail herself of the necessary aftercare sessions and counseling, and perhaps, in part, as a consequence of this failure, she has continued to abuse alcohol. By her own admission Tammy has not taken parenting classes or special educational classes. She has not otherwise significantly improved her living situation or parenting abilities to enable her to provide necessary care and affection to her boys on a consistent basis. The trial court specifically found that the conditions and causes of the boys' deprivation are likely to continue or will not be remedied because Tammy "has not taken meaningful steps to address her alcoholism and to receive appropriate treatment, continues to be involved in unstable relationships with alcoholic and/or abusive men, continues to be unable to provide a stable and safe environment because of frequent changes in her residence, and continues not to cooperate and work with social services including social workers and other professionals in a meaningful way in order to receive the services she needs to meet the minimum needs of her children." After carefully reviewing the record, we conclude there is clear and convincing evidence to support the trial court's finding that the conditions and causes of Ken and Allen's deprivation are likely to continue and will not be remedied.

C. Harm to the Children
[¶ 25] A showing of parental misconduct without a showing there is a resultant harm to the children is not sufficient in parental termination cases. In Interest of L.F., 1998 ND 129, ¶ 27, 580 N.W.2d 573. To terminate parental rights, the evidence must show that as a result of the continued deprivation the children are suffering or will in the future probably suffer physical, mental, moral, or emotional harm. In re D.R., 2001 ND 183, ¶ 18, 636 N.W.2d 412. The trial court found that as a result of the deprivation *350 the boys have suffered and will continue to suffer physical, mental, or emotional harm and concluded "[t]he children are suffering from post traumatic stress disorder and without an appropriate level of care including a stable, consistent and nurturing environment they will not be able to live functional lives." The record supports this finding.
[¶ 26] The boys' foster mother, Annie Pikarski, after testifying about the boys' malnourished condition, emotional fear and trauma exhibited by the boys, and developmental delays manifested by the boys when they entered her home, explained:
You have to take every single baby step with those children. You have to take them back to infancy and bring them to the age that they are at. They have progressed. It has been wonderful to see the progression, but they have so far to go.
[¶ 27] Dr. Duchock testified that these boys have been very emotionally damaged and have suffered significant retardation in development. She testified the boys need "a stable, consistent, nurturing environment... therapy ... continuing speech and language services ... [and] medical attention." Dr. Duchock testified that if the boys do not receive this type of care "they'll be lost" and they will be unable to live functional lives. She testified that for at least two more years these boys are going to need "therapeutic intervention" with consistent reassurances that they are safe and with people they can trust. She testified the prognosis for Tammy's ability to adequately parent these children is very poor.
[¶ 28] While there is evidence Tammy has taken some steps to overcome her alcohol addiction, there is also considerable evidence showing that, at the time of the termination hearing, Tammy had continued to abuse alcohol, had continued to associate in abusive alcohol-dependent relationships, had failed to take parenting courses, and has failed to achieve consistency and stability in her life which would allow her to care for these two young children. While we recognize the steps Tammy has taken to improve her life and to conquer her addiction, in view of the length of the time the deprivation of these children has occurred, the severity of the harm incurred by them, and the high degree of special care required for these boys to overcome their injuries and to live productive happy lives, we cannot allow these children to remain in this indeterminate status midway between foster care and the obvious need for permanent placement. We hold there is clear and convincing evidence that as a result of their deprivation the boys have suffered serious physical, mental, and emotional harm and that, if Tammy's parental rights are not now terminated, these boys will in the future continue to suffer serious physical, mental, and emotional harm.

III
[¶ 29] The record in this case shows by clear and convincing evidence that Ken and Allen are deprived children, the deprivation of these children is not due to a lack of their parents' financial resources, the causes and conditions of the boys' deprivation will likely continue, and, as a result of the deprivation, the boys have and will likely continue to suffer serious physical, mental, and emotional harm. We, therefore, affirm the juvenile court's decision to terminate Tammy and Kip's parental rights to these children.
[¶ 30] VANDEWALLE, C.J., MARING, KAPSNER and SANDSTROM, JJ., concur.
NOTES
[1] The names of the parties, except the State, are pseudonyms.
[2] The trial court found Kip and Tammy were married on July 18, 1996, but Tammy testified they were married in 1997.