2004 ND 138

In the Interest of T.T., a child.

Nancy D. Yon, Assistant State's
Attorney, Petitioner and
Appellee

v.

J.T. (Father), Respondent and Appellee.

M.B. "B." D. (Mother), Respondent
and Appellant.

No. 20030266.

Supreme Court of North Dakota.

June 30, 2004.

Dale Richard Rivard, Assistant State's Attorney, Grand Forks, ND, for petitioner and appellee.

Ronald I. Galstad (appeared) and Patti J. Jensen (on brief), Galstad, Jensen & McCann, PA, East Grand Forks, MN, for respondent and appellee.

Steven Kraft (argued), and Patrick Morley (on brief), Morley Law Firm, Ltd., Grand Forks, ND, for respondent and appellant.

SANDSTROM, Justice.

[¶ 1] The mother of a ten-year-old child appeals from juvenile court orders finding the child was deprived and placing legal custody of the child with the Department of Human Services and physical custody with the mother. We hold the juvenile court's finding there is clear and convincing evidence the child is deprived is not clearly erroneous. We affirm.

I

[¶ 2] The mother and the father of the child were divorced in December 1998. Since 1998, there have been many disagreements between the parents regarding child custody and visitation. This record reflects significant involvement with the family by social services, the police department, the courts, and other professionals since 1998. On April 1, 2003, the State filed a deprivation petition, alleging the child was deprived under N.D.C.C. § 27–

20–02(8)(a) because of parental alienation and exposure to adult conflicts from the parents' divorce. The father admitted the child was deprived and alleged the mother had intentionally and willfully engaged in a pattern of conduct that alienated the child from him.

[¶ 3] After an adjudicatory hearing, the juvenile court ruled the child was deprived, finding both parents were guilty of parental alienation, which resulted in the child's suffering psychologically and emotionally. The court found the child had had no contact with the father for six months, and it was highly unlikely the mother would cooperate to stop the alienation or to foster the child's relationship with the father. After a dispositional hearing, the court ordered the child placed in the care, custody, and control of the Department of Human Services, but allowed the child to remain with his mother unless the Department deemed it necessary to remove the child from the mother's home. The court ordered the child's guardian ad litem to take an active part in facilitating visitation, authorized the Department to establish ground rules for visitation, and ordered the mother and father to participate in individual therapy to establish a level of cooperation and respect for one another to promote the best interests of the child. The court authorized the Department to seek removal of the child from the mother's home if the parties participated in alienating behavior, or if the child resisted visitation with the father. The mother appealed.

[¶ 4] The juvenile court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27–20–02(12) and 27–20–03(1). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 27–20–56(1).

II

[¶ 5] The juvenile court has exclusive jurisdiction over proceedings in which a child is alleged to be deprived. N.D.C.C. § 27–20–03(1)(a); *Interest of D.R.J.*, 317 N.W.2d 391, 393 (N.D.1982). Section 27–20–02(8)(a), N.D.C.C., defines a deprived child as a child who "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child's parents, guardian, or other custodian." A juvenile court's finding of deprivation must be supported by clear and convincing evidence. *Interest of R.K.*, 2002 ND 111, ¶ 6, 646 N.W.2d 699. Effective March 1, 2004, N.D.R.Civ.P. 52(a) was amended to provide that findings of fact in juvenile matters shall not be set aside unless clearly erroneous. A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a) if there is no evidence to support it, if the reviewing court is left with a definite and firm conviction a mistake has been made, or if the finding is induced by an erroneous view of the law. *Akerlind v. Buck*, 2003 ND 169, ¶ 7, 671 N.W.2d 256. Under N.D.R.Civ.P. 52(a), we give due regard to the juvenile court's opportunity to judge the credibility of witnesses. If the juvenile court finds a child is deprived, the court may order an appropriate disposition under N.D.C.C. § 27–20–30.

III

[¶ 6] The mother argues significant errors of law during this proceeding affected the outcome of the case and violated her and the child's constitutional rights.

A

[¶ 7] The mother argues the time lapse between the filing of the deprivation

petition on April 1, 2003, and the deprivation hearing on June 18, 2003, violated the thirty-day requirement of N.D.C.C. § 27–20–22 and denied her due process and equal protection.

[¶ 8] This record does not establish the mother raised this issue in the juvenile court, and she may not raise it for the first time on appeal. *Interest of R.O.*, 2001 ND 137, ¶ 19, 631 N.W.2d 159 (issues not raised in juvenile court, even constitutional issues, generally will not be addressed on appeal); *Interest of A.G.*, 506 N.W.2d 402, 403–04 (N.D.1993) (issues not raised in juvenile court cannot be raised on appeal). Moreover, N.D.C.C. § 27–20–22(1) provides "[e]xcept as otherwise provided in this subsection, the hearing may not be later than thirty days after the filing of the petition," but "[t]he court may extend the time for hearing for good cause shown." Here, the time lapse between the filing of the deprivation petition and the hearing was precipitated, in part, by demands for change of judge by both the mother and the father. Without any objection by the mother, the court proceeded with the deprivation hearing, effectively finding good cause for the delay.

B

[¶ 9] The mother argues the juvenile court erred in allowing issues from a divorce-related child custody proceeding to be mixed with issues about deprivation. The mother argues her "motion made at the foot of the divorce judgment for a modification of the father's visitation rights was referred by the District Court to the Juvenile Court Judge who was presiding over the deprivation matter," and "[t]he Juvenile Court judge in fact made the decision on the motion for a visitation modification just before she began the hearing on deprivation." The mother argues the juvenile court allowed the admission into

evidence of the district court's memorandum decision in the child custody proceeding, clearly mixing the child custody proceeding and this deprivation petition. She also argues the father's attorney improperly participated in the juvenile court proceeding by offering no defense to the allegations against him and, instead, acting as a de facto co-counsel for the State and calling his witness as part of the State's case.

[¶ 10] Under N.D.C.C. § 27–20–03(1), a juvenile court has exclusive jurisdiction over proceedings in which a child is alleged to be deprived. Hearings under N.D.C.C. ch. 27–20 must be conducted by the court separately from proceedings not within the jurisdiction of the juvenile court. N.D.C.C. § 27–20–24(1). This Court has said it is improper to combine a deprivation hearing with a hearing on a motion to modify a divorce decree. *Interest of T.M.M.*, 267 N.W.2d 807, 809–10 (N.D. 1978). Although a juvenile court does not have jurisdiction over divorce-related custody proceedings, a juvenile court need not operate in a vacuum and may take judicial notice of orders in other proceedings. *See Interest of K.S.*, 2002 ND 164, ¶ 9, 652 N.W.2d 341.

[¶ 11] The mother has provided no citations to this record to establish the juvenile court decided a motion for modification of visitation in conjunction with the adjudicatory hearing in the deprivation proceeding. Rather, this record reflects the custody proceeding was conducted separately from the adjudicatory hearing in the deprivation proceeding. *See Interest of E.J.H.*, 546 N.W.2d 361, 363 n. 2 (N.D. 1996); *Interest of T.M.M.*, 267 N.W.2d at 809–12.

[¶ 12] The district court's memorandum decision in the custody and visitation proceeding, which was admitted into evidence in this proceeding, said the court

would defer ruling on visitation issues until the deprivation proceeding was resolved. Although the mother argues the juvenile court erred in admitting into evidence the district court's memorandum decision in the custody and visitation proceeding, the juvenile court denied the State's request to take judicial notice of the entire file in the divorce proceeding but did take judicial notice of adjudications in that file. Rule 201, N.D.R.Ev., authorizes a court to take judicial notice of adjudicative facts which are not subject to reasonable dispute if the facts are either (1) generally known within the territorial jurisdiction of the court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. A juvenile court may take judicial notice of orders in prior proceedings. *See* N.D.R.Ev. 201. *See also Interest of K.S.*, 2002 ND 164, ¶ 9, 652 N.W.2d 341. We reject the mother's argument the juvenile court erred in admitting into evidence the district court's memorandum decision in the divorce proceeding.

[¶ 13] The father was a named party in this deprivation proceeding, and we reject the mother's claim he improperly participated in this proceeding as a de facto co-counsel for the State. At the beginning of the adjudicatory hearing, the following colloquy occurred:

[ASSISTANT STATE'S ATTORNEY]: Your Honor, one last issue before I call my witnesses. Dr. [Stephen] Timm is present this morning, is a witness of [the father's]. [The father's counsel] had indicated to me that they were going to call Dr. Timm as a witness so I did not include him on my witness list which I would have if he was not going to be called by the other parties. Since he was only available for 9 a.m. this morning we had discussed with opposing counsel taking him out of order

so [the father's counsel] will start with his first witness and then we will start with my case unless the Court has a problem with that.

THE COURT: I have no problem. Counsel, you've agreed to that?

[MOTHER'S COUNSEL]: *No problem.*

The mother agreed to the procedure for allowing the father to call a witness during the State's case-in-chief, and she cannot complain about that procedure on appeal. *See Interest of R.O.*, 2001 ND 137, ¶ 19, 631 N.W.2d 159.

[¶ 14] Although disputes about custody and visitation provide the context for this deprivation proceeding, this record does not support the mother's claim the juvenile court improperly mixed divorce-related custody and visitation proceedings with the deprivation proceeding.

C

[¶ 15] The mother argues the juvenile court erred in admitting the testimony and the affidavit of the former guardian ad litem in violation of language in the explanatory note of N.D.R.Ct. 8.7, which states the "role of a guardian ad litem is to act as an attorney" and a "guardian ad litem is not to act as a custody investigator by preparing a custody investigation report or giving testimony." She argues the guardian ad litem denied the child the right to adequate representation. The mother did not raise this issue in the juvenile court, and she may not raise it for the first time on appeal. *Interest of R.O.*, 2001 ND 137, ¶ 19, 631 N.W.2d 159.

D

[¶ 16] The mother argues the juvenile court denied her her constitutional right to custody and companionship of her child. This record does not reflect the

mother raised these constitutional issues in the juvenile court, and she may not raise them for the first time on appeal. *Interest of R.O.*, 2001 ND 137, ¶ 19, 631 N.W.2d 159. Moreover, the constitutional protections afforded parents in their biological children are not absolute or unconditional. *Interest of A.S.*, 1998 ND 181, ¶ 14, 584 N.W.2d 853. The parents' constitutional rights in the relationship with their children are subject to a correlative duty to care for and protect the child. *See Interest of F.H.*, 283 N.W.2d 202, 214 (N.D. 1979). We conclude the mother's constitutional claims are meritless.

## E

[¶ 17] The mother argues the juvenile court erred in admitting testimony by Dr. Stephen Timm regarding the parental alienation syndrome, because it is not a recognized scientific term in the scientific community and does not apply when there is domestic violence. At the deprivation hearing, the mother objected to Dr. Timm's testimony, claiming he did not have the expertise or requisite experience to testify about parental alienation. After further foundation was provided, the court allowed Dr. Timm to testify about parental alienation, ruling his experience qualified him to testify on the subject. The mother's objection was not made on the basis that the parental alienation syndrome was not recognized in the scientific community and should not be used diagnostically. She is precluded from raising this issue for the first time on appeal. *Interest of R.O.*, 2001 ND 137, ¶ 19, 631 N.W.2d 159.

## F

[¶ 18] The mother argues the juvenile court erred in failing to permit her to cross-examine adverse witnesses. Her argument relates to social service reports that were admitted into evidence through the testimony of Cheryl Fiedler, a social worker at the Grand Forks County Social Service Center and the custodian of the reports. At the deprivation hearing, the mother objected to the admission of the reports, arguing they contained hearsay within hearsay. The court admitted the reports as "business records kept in the usual course." *See* N.D.R.Ev. 803(6).

[¶ 19] Without citing any authority, the mother argues she was entitled to cross-examine the social workers who prepared the reports and any witnesses the social workers relied on to make those reports. The mother concedes, "those reports make no specific allegations of [her] behavior that constitutes any form of deprivation," but generally argues she had a right to cross-examine the individuals who prepared the reports.

[¶ 20] We have said that without supportive reasoning or citations to relevant authorities, an argument may be meritless. *Eggl v. Letvin Equip. Co.*, 2001 ND 144, ¶ 23, 632 N.W.2d 435. We have also said a party waives an issue by not providing supporting argument. *Quamme v. Bellino*, 540 N.W.2d 142, 148 (N.D.1995). Here, the mother has not marshaled an argument about the admissibility of the social service reports under the business record exception to the hearsay rule that was relied upon by the juvenile court, *see* N.D.R.Ev. 803(6), or the public records and reports exception. *See* N.D.R.Ev. 803(8). Her brief on this issue makes conclusory assertions that she was entitled to cross-examine the social workers who prepared the reports and any witnesses the social workers relied on in making those reports without citation to any relevant authorities. In view of her concession that the reports make no specific allegations of her behavior that constitute any form of deprivation and her failure to cite any relevant authorities in support of her

argument, we conclude her argument on this issue is without merit.

### G

[¶ 21] The mother argues the juvenile court erred in denying the admission into evidence of records of the supervised exchange center, an entity that was involved with supervising custodial exchanges between the mother and the father. The mother claims those records establish the father's continuing and recent inappropriate and frightening behavior, and she argues those records support her claim that the child's fear of his father is related to the father's behavior. The State responds that the proffered exhibit was not a complete record of all exchange observation forms concerning the child and was not a complete log of all communications. The juvenile court refused to allow those records to be introduced into evidence, ruling they were not a complete record of all exchange observations and communications regarding the parents and the child.

[¶ 22] A trial court has wide discretion in deciding whether proffered evidence is relevant, and a court's decision to admit or exclude evidence on the grounds of relevance will not be reversed on appeal unless the court has abused its discretion. *Wolf v. Estate of Seright,* 1997 ND 240, ¶ 14, 573 N.W.2d 161. We conclude the juvenile court did not abuse its discretion in refusing to admit those records.

### IV

[¶ 23] The mother argues the State failed to establish deprivation by clear and convincing evidence and, even if there was evidence of deprivation, the overwhelming evidence presented by her clearly outweighed any evidence presented by the State. She also argues the juvenile court failed to identify subordinate facts upon which its ultimate conclusion rested.

[¶ 24] In its written findings, the juvenile court found both parents guilty of parental alienation, but the court found the father's attitude was more cooperative regarding recommendations. The court found the mother has not cooperated and was unlikely to cooperate, but if the mother lost custody because of continued parental alienation and hindrance of visitation, she would obey a court order. The court also made oral findings that may be used to explain the juvenile court's decision. *See Global Acquisitions, LLC v. Broadway Park Ltd. Partnership,* 2001 ND 52, ¶¶ 18–19, 623 N.W.2d 442. The court's oral findings state that both parents have had a history of psychological maltreatment of the child since June 1998 and that both parents need to gain further understanding of how the divorce has affected their child. The court found the parents had placed the child in the middle of their disputes, and the child was trying to please each parent when he was with that parent. The court also cited Dr. Stephen Timm's opinion about parental alienation and the mother's being an "obsessed alienator." The court found that despite warnings, the parents had not changed their behavior since 1998. The court also found the mother had not been cooperative, and found it was unlikely she would cooperate with any attempts to stop her alienating behavior.

[¶ 25] The juvenile court's written and oral findings on deprivation adequately explain the basis for the court's ruling. This record reflects evidence of psychological maltreatment and parental alienation of the child by both the father and the mother from the time of the divorce, which constitutes evidence of psychological and emotional harm to the child within the meaning of N.D.C.C. § 27–20–02(8)(a).

Under N.D.R.Civ.P. 52(a), we give due regard to the juvenile court's opportunity to judge the credibility of witnesses, and we do not reweigh the evidence as suggested by the mother. We conclude the juvenile court's finding there is clear and convincing evidence of deprivation is not clearly erroneous.

### V

[¶ 26] We affirm the juvenile court orders.

[¶ 27] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.