701 N.W.2d 924 (2005)
2005 ND 138
In the Interest of B.J.K., a child.
Thomas H. Falck, Jr., Assistant State's Attorney, Petitioner and Appellee
v.
T.L., (Mother), Grand Forks County Social Service Center (Custodian), Respondents and
R.K., (Father), Respondent and Appellant.
No. 20050025.
Supreme Court of North Dakota.
July 25, 2005.
*925 Carmell F. Mattison (appeared), Assistant State's Attorney, Grand Forks, N.D., and Meredith Larson (argued), third-year law student, appearing under the Rule on the Limited Practice of Law by Law Students, for petitioner and appellee.
DeWayne A. Johnston, Grand Forks, N.D., for respondent and appellant.
SANDSTROM, Justice.
[¶ 1] R.K. appeals a juvenile court judgment terminating his parental rights to B.J.K. Concluding the juvenile court did not err in terminating R.K.'s parental rights, we affirm.

I
[¶ 2] R.K. ("the father") and T.L. ("the mother") are the unmarried biological parents of B.J.K. ("the child"), who was five years old at the time of the termination hearing. The mother has another child, C.L. ("the other child"), of whom R.K. is not the biological father. Before the birth of the younger child, the Grand Forks County Social Service Center ("Social Services") received two reports of possible abuse and neglect of the other child by the mother. In May and November of 2001, Social Services received additional reports of possible abuse or neglect of both children by the mother. After investigating the two reports, Social Services did not recommend removing the children from the household, but after the November report, Social Services recommended that the parents stop fighting in the presence of the children. In 2002, Social Services received another report alleging the father and mother were using drugs and the mother was being verbally abusive to others in the presence of the children. Social Services found drug use by both parents as well as domestic violence, inadequate child supervision, and unsanitary home conditions. Social Services noted that *926 both parents completely denied the existence of any problems and were unwilling to participate in any services that might be beneficial in remedying the problems. Because of the risk to the children, Social Services set requirements for the father and mother to meet, including having chemical dependency evaluations, maintaining a clean and safe home, and making sure the other child went to school.
[¶ 3] On May 14, 2002, a social worker arrived at the father and mother's residence for a scheduled home visit and found the mother asleep with the children in the house. The other child could not wake the mother, so the social worker called the police because she was concerned the mother was not all right. The social worker let herself into the house and eventually was able to shake the mother awake. On May 20, 2002, an affidavit was submitted by Social Services requesting the children be placed in temporary custody pending further investigation. A hearing was held, and an order issued, on May 22, 2002, removing the children from the care, custody, and control of the father and mother for 60 days. A series of hearings and orders continued to keep the children in the control of Social Services and out of the parents' home. The other child was later placed with a relative. The younger child, whose custody is the center of this appeal, was placed with another relative and then was moved to foster care in 2003.
[¶ 4] In August 2004, Social Services petitioned the juvenile court for an involuntary termination of parental rights. The juvenile court found the mother did not follow through on her drug and alcohol treatment and other programs recommended by Social Services. The juvenile court found the father did not maintain his sobriety, submit to drug screening, or maintain regular contact with his case manager. After finding that the mother and father did not follow Social Services' recommendations and that the child was a deprived child, the juvenile court terminated the father's and the mother's parental rights.
[¶ 5] The father appeals.
[¶ 6] The juvenile court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27-20-02(12) and 27-20-03(1). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 27-20-56(1).

II
[¶ 7] The father appeals, arguing the juvenile court erred in concluding there was clear and convincing evidence that the conditions and causes of deprivation were likely to continue. He argues there are no facts in this case that present the degree of abuse or neglect required under the statute to terminate his parental rights. He claims that even with the alleged neglect, the child was not without appropriate clothing, food, or housing. He concedes the mother has unresolved problems but argues he should not be punished for her behavior.
[¶ 8] Social Services argues there was clear and convincing evidence that the conditions and causes of deprivation were likely to continue and that the child would suffer future physical, mental, moral, or emotional harm if returned to the father.
[¶ 9] Parental rights may be terminated if a child is deprived and the court finds the "conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm." N.D.C.C. § 27-20-44(1)(b)(1). A deprived child is one who is "without proper parental care or control, subsistence, education as required by law, *927 or other care or control necessary for the child's physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child's parents, guardian, or other custodian." N.D.C.C. § 27-20-02(8)(a).
[¶ 10] A juvenile court has jurisdiction over proceedings in which a child is alleged to be deprived. N.D.C.C. § 27-20-03(1)(a). A juvenile court's finding of deprivation will not be set aside unless it is clearly erroneous. N.D.R.Civ.P. 52(a). A finding of fact is clearly erroneous if there is no evidence to support it, if the reviewing court is left with a definite and firm conviction that a mistake has been made, or if the finding was induced by an erroneous view of the law. Interest of T.T., 2004 ND 138, ¶ 5, 681 N.W.2d 779. We give "due regard to the juvenile court's opportunity to judge the credibility of witnesses." Id.
[¶ 11] The juvenile court held the child was deprived because the mother had not followed through on her inpatient treatment for drugs and alcohol, nor had she addressed the domestic violence problems, completed anger management treatment, maintained contact with her case managers, or completed a nurturing parent program. The court stated the situation was not safe because of the continued drug use by both parents. The court found the father has not maintained sobriety or contact with his case manager, and he did not follow through on his urinalysis screenings.
[¶ 12] This Court has affirmed juvenile court judgments terminating parental rights when parents were using drugs and showed little or no signs of improving. See Interest of E.R., 2004 ND 202, 688 N.W.2d 384 (incarceration and indications that parent has not changed and may return to drugs sufficient to terminate parental rights); Interest of T.T., 2004 ND 138, 681 N.W.2d 779 (parents had previously been warned about their behavior and had not changed their behavior in over five years); Interest of B.N., 2003 ND 68, 660 N.W.2d 610 (mother failed to participate in numerous programs recommended by county social service agency to improve her parenting abilities, including parenting classes, nurturing classes, domestic violence treatment, anger management treatment, and relationship counseling); Interest of K.S., 2002 ND 164, 652 N.W.2d 341 (terminated parental rights because mother had not taken meaningful steps to address her alcoholism or receive treatment; she continued to be involved in unstable relationships with alcoholic and abusive men and continued not to cooperate and work with social services, including social workers and other professionals, in a meaningful way); Interest of D.R., 2001 ND 183, 636 N.W.2d 412 (mother abused drugs in the presence of children and lived with male roommates who had been abusive to her and the children); but see Interest of W.E., 2000 ND 208, 619 N.W.2d 494 (deprivation not likely to continue because church congregation offered mother help, and there was testimony the mother was capable of raising children despite being mildly retarded).
[¶ 13] The juvenile court found that the father used drugs and alcohol, was verbally abusive to the mother in front of the children, could not control his anger, and was hostile toward the social workers, and that the child's fine motor skills were underdeveloped from living with the father and the mother. These findings support the conclusion the child was deprived.
[¶ 14] The father argues, if there was deprivation, it would not continue. "In determining whether the causes and conditions of deprivation will continue or will not be remedied, evidence of past deprivation alone is not enough, and there *928 must be prognostic evidence that forms the basis for reasonable prediction of continued or future deprivation." Interest of E.R., 2004 ND 202, ¶ 7, 688 N.W.2d 384. Prognostic evidence is "evidence that forms the basis of reasonable prediction as to future behavior." Interest of D.R., 2001 ND 183, ¶ 11, 636 N.W.2d 412.
[¶ 15] The juvenile court found that the father failed to complete the requirements set out by Social Services and that he was living with the mother again. The juvenile court and the father recognize the mother has a detrimental effect on the child. The failure of one parent to separate from the other parent justifies termination of a parental relationship if the one spouse creates a dangerous environment for the child. See Interest of D.N., 2001 ND 71, 624 N.W.2d 686; Interest of N.N., 278 N.W.2d 150 (N.D.1979); Interest of K.P., 267 N.W.2d 1 (N.D.1978); Interest of J.Z., 190 N.W.2d 27 (N.D.1971). The father's allowing the mother to move back in with him demonstrates that his priority is to maintain a relationship with the mother instead of his child.
[¶ 16] At the time of the trial, the child had been out of the father's home for 927 days. "When there has been an extensive period in which efforts have been made to overcome a parent's inabilities to effectively parent, the courts cannot allow the children `to remain in this indeterminate status midway between foster care and the obvious need for permanent placement.'" Interest of B.N., 2003 ND 68, ¶ 25, 660 N.W.2d 610 (citations omitted). This child's living situation should not continue to linger on in the hope that the father may finally follow through on his promise to reform.

III
[¶ 17] The juvenile court was not clearly erroneous in determining that the child was deprived and that the father's living with the mother and his failure to follow through on his programs are prognostic evidence that deprivation would continue if the child returned home.
[¶ 18] We affirm the juvenile court's judgment.
[¶ 19] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, JJ., concur.
[¶ 20] The Honorable DANIEL J. CROTHERS did not participate in this decision.