688 N.W.2d 384 (2004)
2004 ND 202
In the Interest of E.R., a Child
Lisa Johnson, L.S.W., Petitioner and Appellee
v.
Director, Cass County Social Services, M.R., R.R., John Doe, E.R., and Jared Simonson, Guardian ad Litem, Respondents
M.R., Respondent and Appellant.
No. 20040122.
Supreme Court of North Dakota.
November 2, 2004.
*386 Constance Louise Cleveland, Assistant State's Attorney, Fargo, N.D., for petitioner and appellee.
Douglas W. Nesheim, Johnson, Ramstad & Mottinger, Fargo, N.D., for respondent and appellant.
KAPSNER, Justice.
[¶ 1] M.R. ("Martha," a pseudonym) appealed from a judgment terminating her parental rights to her daughter, E.R. ("Elsie," a pseudonym). We hold the trial court's findings that there is clear and convincing evidence Elsie is deprived, the causes and conditions of the deprivation are likely to continue and, as a result of the continued deprivation, Elsie will probably suffer serious physical, mental, or emotional harm if parental rights are not terminated, are not clearly erroneous. We affirm.

I. Facts
[¶ 2] Elsie was born in January 2001. Martha and Elsie's father, R.R. ("Robert," a pseudonym) married shortly thereafter. About two months after Elsie's birth, Robert was incarcerated on multiple convictions of reckless endangerment, and he continued to be imprisoned at the time of the termination hearing. Martha was arrested for possession of methamphetamine and drug paraphernalia in February 2003, and Elsie was at that time removed from her home and placed with Robert's half brother and wife, where she currently resides.
[¶ 3] Martha has a lengthy history of drug use starting at the age of 14. She has been diagnosed with dependencies on amphetamines, cannabis, and nicotine. Lisa Johnson, a licensed social worker with Cass County Social Services, was assigned as case manager for this family. She testified that Martha has "some pretty good parenting skills" and during visitations things went well. However, Martha was again arrested on May 13, 2003, on *387 charges that she sold fake methamphetamine to an undercover informant. Martha was convicted on those charges and at the time of the hearing was incarcerated, with a release date of October 25, 2005.

II. Standard of Review
[¶ 4] Effective March 1, 2004, N.D.R.Civ.P. 52(a) was amended to provide that findings of fact in juvenile matters shall not be set aside unless clearly erroneous. When existing rules of procedure are amended or new rules are added we will apply them to actions then pending unless their application would not be feasible or would work an injustice. In re T.F., 2004 ND 126, ¶ 8, 681 N.W.2d 786. In this case, Martha requested a review of the referee's decision by the district court. Under these circumstances, we will apply N.D.R.Civ.P. 52(a) as amended, and we will not set aside the court's findings of fact unless they are clearly erroneous. See In Interest of T.J.L., 2004 ND 142, ¶ 2, 682 N.W.2d 735.

III. Parental Termination
[¶ 5] Under N.D.C.C. § 27-20-44(1)(b)(1) a juvenile court may terminate parental rights if: (1) the child is a deprived child; (2) the conditions and causes of the deprivation are likely to continue; and (3) by reason thereof the child is suffering, or will probably suffer serious physical, mental, moral, or emotional harm. The party seeking parental termination must prove all elements by clear and convincing evidence. In re K.S., 2002 ND 164, ¶ 6, 652 N.W.2d 341.

A. Deprivation
[¶ 6] A deprived child is statutorily defined under N.D.C.C. § 27-20-02(8)(a) as one who "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child's parents, guardian, or other custodian." At the time of the termination proceedings both parents were incarcerated, resulting in Elsie not having available parental care or control by either parent. The definition of a deprived child is broad enough to encompass a child whose parent is shown to be presently incapable of providing proper parental care or control. In re T.F., 2004 ND 126, ¶ 11, 681 N.W.2d 786. On March 4, 2003, Martha admitted Elsie is a deprived child, and Martha has not raised this element of parental termination as an issue on appeal.

B. Continued Deprivation
[¶ 7] Martha asserts there is not clear and convincing evidence to support a finding that the deprivation is likely to continue. In determining whether the causes and conditions of deprivation will continue or will not be remedied, evidence of past deprivation alone is not enough, and there must be prognostic evidence that forms the basis for reasonable prediction of continued or future deprivation. In re T.K., 2001 ND 127, ¶ 14, 630 N.W.2d 38.
[¶ 8] Although incarceration, by itself, does not establish abandonment of a child for purposes of terminating parental rights, a probability of serious mental and emotional harm to the child may be established by prognostic evidence that a parent's current inability to properly care for the child will continue long enough to render improbable the successful assimilation of the child into a family if the parent's rights are not terminated. In re T.F., 2004 ND 126, ¶ 12, 681 N.W.2d 786. Although Martha is hoping for an earlier release date, her scheduled date of release is October 25, 2005. By her own testimony *388 she admits that upon release she would not be able to immediately take custody of Elsie and that the child would have to be gradually returned to Martha's care and custody. Johnson testified Martha has not changed the nature of her social group to one which would encourage Martha toward the direction of stability, sobriety, and being in a position to care for and nurture her child. Will Brink, a licensed addiction counselor with the Southeast Human Services Center, testified that while Martha agreed to attend "NA" meetings, she rejected the aftercare program with the service center, designed to change the behavior that led her to chemical dependency. He testified that without aftercare there is less chance of recovery. Failure to follow the recommendations for addiction recovery demonstrates an indifference toward one's obligations and responsibilities as a parent. In re S.F., 2000 ND 161, ¶ 11, 615 N.W.2d 511.
[¶ 9] Martha's history of drug use does not bode well for her to stay clean of drugs and out of prison. She admits that she has been a heavy user of methamphetamine since the age of 19, and although she claims to have quit using drugs during her pregnancy with Elsie, she thereafter relapsed into some usage. At the very least, she has continued to associate herself with persons involved in illegal drug use. The juvenile court made the following findings:
The deprivation of the child is likely to continue, due to the chronic nature of the mother's chemical usage and dependency and the father's chronic criminal behavior.
....
While the mother testified that she may be released from her incarceration early, and is eligible for programs that would make community placement available, those are only possibilities that have not yet been realized. It is not in the child's best interests to continue in foster care in order to determine whether these options will ever materialize. Even if these opportunities were immediately available, this does not put the mother in a position to offer stability and parenting to the child any time soon.
When a parent, through voluntary actions, without reasonable justification, makes herself unavailable to care for and parent a young child, the child should not be expected to wait or assume the risk involved in waiting for permanency and stability in her life. In re C.R., 1999 ND 221, ¶ 12, 602 N.W.2d 520. The evidence supports the trial court's finding there is clear and convincing evidence the deprivation is likely to continue, and we conclude that finding is not clearly erroneous.

C. Harm to the Child
[¶ 10] To terminate parental rights, the evidence must also show that as a result of the continued deprivation, the child is suffering, or will in the future probably suffer physical, mental, moral, or emotional harm. In re D.R. 2001 ND 183, ¶ 18, 636 N.W.2d 412. Johnson testified that Elsie is a young child who needs permanency and stability, and harm will come to the child if termination is not granted, because she will not receive the stability and permanency that she now needs. Johnson testified by affidavit that "it is not in [Elsie's] best interest to remain in a long term relative placement nor guardianship without the permanency afforded by adoptive status."
[¶ 11] Assisting a parent to establish an adequate environment for the child by offering long term and intensive treatment is not mandated if it cannot be successfully undertaken in a time frame that would enable the child to return to the parental home without causing severe dislocation *389 from emotional attachments formed during long-term foster care. In re T.K., 2001 ND 127, ¶ 15, 630 N.W.2d 38. Regarding this issue the juvenile court found:
The child is likely to suffer serious physical, mental, or moral, or emotional harm as she is not afforded the stability necessary to form appropriate emotional bonds with her care providers if she is forced to linger in foster care until her parents are available to re-establish themselves in parental roles.
The record supports the trial court's finding there is clear and convincing evidence Elsie will likely suffer harm if parental termination is not granted, and we conclude that finding is not clearly erroneous.

IV. Support Services
[¶ 12] Under N.D.C.C. § 27-20-32.2(2), reasonable efforts must be made to preserve and to reunify families, absent aggravated or other specified circumstances. Martha asserts there is not clear and convincing evidence to support a finding of aggravated circumstances which would obviate the need for Cass County Social Services to make reasonable efforts to preserve this family. Although the juvenile court made a finding there were aggravated circumstances, there was record evidence that Cass County Social Services did make efforts to reunite and preserve this family. Johnson testified it was Martha's arrest on May 13, 2003, and her subsequent incarceration, which got the assistance plan by the social workers "off track."
[¶ 13] It is not enough that a parent indicates a desire to improve behavior; rather, the parent must be able to demonstrate present capability, or capability within the near future, to be an adequate parent. McBeth v. M.D.K., 447 N.W.2d 318, 322 (N.D.1989). Whether there are aggravated circumstances which would obviate the need for providing assistance is not dispositive here. The record evidence shows that assistance was offered. Martha, by her voluntary conduct in breaking the law resulting in her incarceration, derailed that assistance. She cannot now complain that assistance was not made available to her.

V. Conclusion
[¶ 14] We hold the trial court's finding that there is clear and convincing evidence to support the termination of Martha's parental rights to Elsie is not clearly erroneous. Judgment affirmed.
[¶ 15] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, WILLIAM A. NEUMANN, and MARY MUEHLEN MARING, JJ., concur.